BEEBE STAVE COMPANY v. AUSTIN.

Opinion delivered November 8, 1909.

1. LIEN—ENFORCEMENT.—One who has a lien upon property which is wrongfully converted by another with the notice of such lien may enforce his lien upon the proceeds of the property so converted. (Page 251.)

2. FRAUDULENT CONVEYANCES—INADEQUACY OF PRICE.—Payment of $200 as the price paid for timber worth $400 is not so grossly inadequate as to indicate that the purchaser knew of a fraudulent intent upon the part of the seller, and thus assisted him in the commission of fraud. (Page 253.)

3. BILLS AND NOTES—FRAUD—NOTICE.—Where negotiable notes were accepted as payment for timber sold, and were transferred to an innocent purchaser, subsequent notice to the maker of the note that the sale of the timber was a fraud upon the rights of a third person will not bind such maker. (Page 254.)

Appeal from Perry Chancery Court; *Jeremiah G. Wallace,* Chancellor; reversed.

*J. A. Comer,* for appellant.

To impeach a conveyance for inadequacy of consideration, the inadequacy must be so gross as to shock the sense of justice and indicate fraud. 29 Ohio St. 1; 86 Ark. 460; 7 Md. 537; 61 Am. Dec. 375; 64 Ark. 185. While a creditor need not now reduce his claim to judgment, he must prove the insolvency of the grantor before he can successfully attack the conveyance. Kirby's Dig. § 6297. When negotiable notes given as evidence of an indebtedness are negotiated by the payee, it is equivalent to paymtnt by the debtor. 55 Ga. 497.

*John L. Hill,* for appellee.

Although the deed recited the consideration paid, yet the vendor had an equitable vendor's lien on the land enforceable against the vendee and his assignees with notice. 41 Ark. 292; 31 Ark. 728; 29 Ark. 218; *Id.* 440; *Id.* 563. All persons buying with notice of an equity take subject to that equity. 29 Ark. 568; 31 Ark. 89; 41 Ark. 292. Notice at any time before payment is sufficient to defeat the defense of an innocent purchaser. 32 Ark. 257; 12 Ark. 552. One who purchases with notice of such facts as put him on inquiry takes no title. 58 Ark. 446. Implied notice is imputed to one who is shown to be conscious of having means of knowing which he does not use. 1 Am. St. 295; 57 *Id.* 515.

FRAUENTHAL, J. The appellees, Mrs. John Austin and the First National Bank of Perry, the plaintiffs below, instituted this suit against the defendants below, J. D. Richards and the Beebe Stave Company, to enforce a vendor's lien upon certain land, and to charge the Beebe Stave Company with the value of the timber cut therefrom. It is alleged in the complaint that Mrs. Austin sold the lands to Richards, and conveyed same to him by a deed which recited that the consideration had been paid in full, but that the recital was untrue, and that Richards had not in fact paid such purchase money or any part thereof, but had given notes therefor which were unpaid; and for a recovery of the notes the suit was brought; that Richards sold the timber on said land to the Beebe Stave Company, who purchased with full knowledge that said purchase money of the land had not been paid. The prayer was for judgment against Richards for the amount of the notes, and that same be declared a vendor's lien upon the land, and for sale thereof in event of non-payment of the judgment; and also for judgment against the Beebe Stave Company for the value of said timber.

The Beebe Stave Company made answer that it purchased the timber from Richards in good faith and for a valuable consideration and without any notice that any of the purchase money for the land was unpaid.

It appears from the evidence that the plaintiff, Mrs. Austin, who was a nonresident of the State, had employed one G. W. Rhea to sell the land for her, and agreed to sell same for $500, and to pay him $20 for his services. He thereupon sold

the land to defendant J. L. Richards and sent to her a deed for execution which recited that the consideration was $480, and also recited that the purchase money was paid in full. She duly executed the deed on January 28, 1907, and returned the same to her agent, Rhea, who delivered it to Richards. The Beebe Stave Company was engaged in buying timber with its office at Little Rock, Ark.; and at this time was engaged in logging near the land in controversy. One of the men who was logging for the company had gone over the land in controversy and had estimated the amount of timber on the land. This party had desired to borrow from the Beebe Stave Company money with which to purchase this timber, but the officers of the company told him that the company would purchase the timber if it was for sale.

On February 27, 1907, Richards went to the office of the Beebe Stave Company at Little Rock and offered to sell the timber on the land for the sum of $200. He had with him his deed from Mrs. Austin, which was examined by the secretary of the Beebe Stave Company; and, relying upon his statement that he owned the land and the recital of the deed that the purchase money was paid, it bought the timber from Richards, who executed to it a timber deed therefor. In payment for the timber, the Beebe Stave Company executed to Richards two negotiable notes, each for $100, and due, respectively, 90 and 120 days after date, and Richards accepted these notes in payment for the timber. At this time the deed from Mrs. Austin to Richards had not been recorded. On the following day, February 28, 1907, Richards for value sold and transferred the two notes to the German National Bank of Little Rock, Ark., who then became the true owner thereof.

It appears from the testimony that Rhea, the agent of Mrs. Austin, actually sold the land to Richards for $625, taking from him two notes, each of which was dated January 28, 1907, and due twelve months thereafter, and recited that it was given as payment for said land. One of these notes was for $500, and made payable to Mrs. John Austin, and the other was for $125, and was made payable to G. W. Rhea. This latter note Rhea sold and transferred to the First National Bank of Perry, one

of the plaintiffs. It is upon these two notes, aggregating $625, that this suit is instituted.

It appears that the Beebe Stave Company began cutting the timber on the land soon after their purchase, and in May, 1907, they had cut a great part thereof when they were notified that Richards had not paid the purchase money. The amount of timber cut by them from the land was estimated to be of the value of $400.

The chancery court rendered a judgment against Richards by default for $625, the amount of the notes, and decreed a sale of the land for its payment. The land was sold by a master under this decree pending the further litigation against the Beebe Stave Company, and brought $259.40, exclusive of the cost of the suit to that date. Thereupon the court found that the plaintiffs had a lien on the timber sold to the Beebe Stave Company for the purchase money of the land, and rendered a judgment against that company in favor of plaintiff for the sum of $220.60, the difference between the amount named in the deed as the purchase price of the land, towit: $480, and the above net amount, after payment of cost, for which the land was sold by the master. From the decree thus rendered against it the Beebe Stave Company prosecutes this appeal.

The only question involved upon this appeal is the right of the plaintiffs to recover from the Beebe Stave Company the proceeds of the timber which they cut and removed from the land or any part of said proceeds. The plaintiffs contend that they had a vendor's lien for the purchase money upon the land involved in the suit, and therefore upon the standing trees thereon as a part of the land. That the Beebe Stave Company purchased the timber with notice that the purchase money had not been paid, and therefore with notice of their lien therefor, and thereafter removed the trees from the land and wrongfully converted them to its own use. It is a principle of equity that when one has a lien upon property which is taken, and said property is wrongfully converted by another, with notice of such lien, the owner may have his lien fixed upon the proceeds of the property, where the lien on the property has thus been destroyed by the wrongdoer. 3 Pomeroy, Eq. Jur. (3d Ed.) § 1233; *Reavis* v. *Barnes,* 36 Ark. 575; *Judge* v. *Curtis,* 72 Ark. 132.

And it is upon this equitable doctrine that the plaintiffs base their right to equitable relief in this case against the Beebe Stave Company. But from the evidence in this case we are of the opinion that it clearly appears that the Beebe Stave Company at the time it purchased and paid for this timber was a *bona fide* purchaser thereof for a fair and adequate consideration and without any notice, either actual or constructive, that the purchase money was not paid or that plaintiffs had any lien on the timber therefor. The Beebe Stave Company was engaged in purchasing timber at this time, and was then logging near the land in controversy. It had been buying timber on lands in that locality from parties indiscriminately, and it was not unreasonable for it to have told one of its logging men, who desired to purchase the timber on the land, that the company would rather purchase it. From this party the company learned the amount and character of the timber upon the land, so that, when Richards offered to sell the timber, it was sufficiently advised as to the value of the timber to make a price therefor.

Richards came to the office of the company in the ordinary way of doing business and made the offer to sell the timber in the usual course of business. He presented his deed for inspection and claimed to own the land. That the deed was not recorded was no suspicious circumstance, as urged by plaintiffs, because numbers of good and honest men do not place their deeds on record. The deed recited the amount of the consideration of the land and that the entire purchase money was paid. The amount of the consideration named in the deed was a reasonably fair price for the land and the timber thereon, because all that the plaintiff asked therefor was $500, and the deed named the amount of the consideration to be $480. The land contained 160 acres, and the sum of $200 as the price named for the timber thereon was not an unreasonably small price. The company then paid for the timber with its negotiable notes. There was nothing in the acts or conduct of Richards in his transaction with the Beebe Stave Company to arouse any suspicion that he was endeavoring to defraud the plaintiff; and there is not a particle of testimony that indicates that the officers of this company intended to defraud the plaintiff or had any reason or right to believe that Richards was endeavoring to do

so. There is no act or word of Richards or circumstance that was sufficient to give them notice that the purchase money was not paid or to cause them to make any further inquiry, so that they could have learned that it was not paid.

It is urged by the plaintiffs that the price paid by the company was so inadequate as to put it on inquiry, and that such inadequacy of price stamps the transaction as fraudulent. But mere inadequacy of price is not sufficient to put the purchaser upon inquiry or to invalidate the sale. Mr. Pomeroy in his work on Equity says: "The doctrine is now well settled that mere inadequacy—that is, inequality in value between the subject-matter and the price—is not sufficient to constitute constructive fraud." "When the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be sufficient proof that the purchase is not *bona fide.*" 2 Pomeroy, Eq. Jur. §§ 926, 927.

Another writer says the inequality must be so great as to shock the sense of justice. 6 Am. & Eng. Enc. Law, 701. The proof of a grossly inadequate price paid for the property is really evidence affecting the good faith of the purchaser from which it might be inferred as a fact that the purchaser knew of the fraudulent intent of his grantor, and thus assisted him in his commission of fraud. *Hogg* v. *Thurman,* 90 Ark. 93.

In the case at bar the price of the land with the timber thereon was placed by the owner at $500. The land after the timber had been cut off sold by the master for $300. It cannot then be said that $200 was a grossly inadequate price for the timber. It is true that an estimate had been placed on the timber of a value of $400 by some parties. But, when the vicissitudes of the logging and timber business are considered, it cannot be said that an ordinarily prudent and careful business man who wishes to make some profit upon his trades has given a grossly inadequate price in paying only the price that the Beebe Stave Company paid for this timber. It is not sufficient to definitely prove that the officers of the company had reason to believe that Richards was trying to defraud his vendor; and when the deed was shown to them reciting that the vendor acknowledged full payment of the purchase money, the price at which Richards agreed to sell the timber was not sufficient to

arouse a just suspicion in them which would reasonably call upon them to make further inquiry. *Fly* v. *Screeton,* 64 Ark. 183; *Hoskins* v. *Fayetteville Gro. Co.,* 79 Ark. 399.

And from the evidence we do not find proof of any other fact or circumstance of suspicion which gave the officers of the company notice of any fraudulent intent on the part of Richards, or that the purchase money was not paid; nor of any circumstance sufficient to cause them to make further inquiry. It is urged by plaintiffs that in May, 1907, and before all the timber had been cut and removed, actual notice was given to the Beebe Stave Company that the purchase money had not been paid. But at that time said company had fully paid for the timber, and the timber was then its property. It had given for the timber negotiable notes which were accepted as payment, and these notes had been long before May sold and transferred to an innocent third person, who then held and owned the notes, and thereafter the Beebe Stave Company made payment of these notes to this third person, the German National Bank, the true owner thereof. This constituted a full payment, as the notes were sold and transferred long before the notice received by the company. 30 Cyc. 1203.

It follows therefore that the chancery court erred in holding that the Beebe Stave Company bought the timber with notice, either actual or constructive, of the equitable rights or lien of the plaintiff, and that it erred in rendering any judgment against the Beebe Stave Company.

The decree of the chancery court is reversed, and a decree is here rendered dismissing the prayer of the complaint, in so far as it seeks any judgment against the Beebe Stave Company.