JOHNSON *v.* FOSTER.

4-6124                                    146 S. W. 2d 681

Opinion delivered December 9, 1940.

*Bernard P. Whetstone, Jr.,* and *Geo. M. LeCroy,* for appellants.

*Wm. E. Patterson* and *Mahony & Yocum,* for appellees.

SMITH, J. Appellants are the heirs-at-law of W. L. Johnson, who died in April, 1938, and they seek, by this suit, to cancel a mineral deed executed by their ancestor to Pierce Foster on May 8, 1937, for the consideration of $100. This relief is prayed upon the ground that the ancestor, Johnson, lacked the capacity to make a valid conveyance of his real estate, and that his mineral deed was a constructive fraud. Other questions are discussed arising out of the fact that Foster subsequently conveyed to persons who were made parties to the suit. We find that the decision of the question of Johnson's capacity to convey is decisive of all questions raised in the case, and we, therefore, decide no other.

The ancestor, Johnson, at the time of the execution of his deed, was 87 years old, and his heirs now say their ancestor was then senile, weak in both body and mind, and incapacitated to make the deed, and the testimony in their behalf is to the effect that Johnson was confined to his death bed within eight months after executing the deed, and that he died from old age within a year after the date of its execution.

The testimony as to Johnson's mental capacity was all given by lay witnesses. No expert witness was called by either side. Five witnesses testified in behalf of the heirs. Of these Mrs. B. Durham was a daughter; Mrs. W. R. Wilson, a granddaughter; Lawrence E. Johnson was a son, and J. M. McDuffie was the husband of a daughter of the grantor. The fifth was Alvin Laney, who was the only disinterested witness testifying on behalf of the heirs on the question of the capacity to make the deed. All of these gave testimony as to the state of Johnson's health, and related their observation of and association with him. Based upon the facts related by them, all these witnesses expressed the opinion that on the day

of the execution of the deed Johnson lacked mental capacity to make it. Other witnesses testified as to the value of the property conveyed and the inadequacy of the price.

A large number of witnesses, most of whom had no interest in the litigation, after stating the facts upon which their opinions were based, expressed the opinion that Johnson did have the capacity essential to the execution of a valid deed. Among these was the justice of the peace who took the acknowledgment. Another was Joe Galbraith, a nephew of Johnson, who testified that his uncle had lived with him for seven years prior to the execution of the deed. This witness testified that Foster, the grantee, came to see his uncle the week before the execution of the deed, and proposed to buy the property. Johnson asked for time to consider the proposition. A week later Foster returned and made him an offer of a hundred dollars, which was accepted. After the transaction was closed, Johnson stated to witness, his nephew, that he had been paid more than he had expected. This witness expressed the opinion that Johnson's mind was sound and that he knew what he was selling and what he was getting for his deed.

A sister of this witness testified that Johnson, her uncle, had lived with her and her brother in their home for seven years, and she expressed the opinion that her uncle was not of weak mind, but was of sound mind. Other witnesses testified that Johnson walked long distances unassisted, that he went alone to a store where he cashed checks and made purchases of articles desired. A neighboring farmer testified that a week or so after the execution of the deed Johnson told him he had sold the mineral under a tract of land for $100, and expressed the opinion that had he waited longer he might have gotten more for his deed, but that he was an old man and wanted the benefit of the money before he died.

The chancellor prepared an opinion, in which the testimony was reviewed. This opinion reflects a clear and correct conception of the law applicable to the issues raised in the testimony.

This opinion contains the recital that "There is no evidence of fraud, coercion, or undue influence, on the part of the defendant (Foster), or any one." This finding is in accordance with the undisputed testimony.

It is argued, however, that, in view of the advanced age of the grantor, and the inadequate consideration paid him, the court should have found there was constructive fraud. It is argued that the property rights conveyed were worth $3,000, for which only $100 were paid. It appears that some twenty-five years ago Johnson had owned three 40-acre tracts of land, all of which he had sold, but that he had reserved a half interest in the mineral rights under the 120 acres. By subsequent trades he owned all the interest in the mineral rights under 60 of the 120 acres, and it was the conveyance of this interest which this suit seeks to set aside.

The plaintiffs assert, as has been said, that this interest was worth $3,000 at the time it was conveyed; but we do not think the testimony supports that contention. The land on which the mineral conveyance was made is twelve miles from oil-producing land in the Shuler field, on which its mineral value is based, and in 1929 a dry hole was drilled within three or four miles of it. All of the testimony is to the effect that the value of oil leases, especially in unproved areas, is highly speculative, and fluctuates widely and rapidly. While the testimony does not show that the value of this oil interest approximated $3,000, we do think it shows that it was worth considerably more than was paid for it, although there was testimony as to sales of other leases in that vicinity at prices only slightly higher, one of these purchasers from other owners being the Standard Oil Company. Upon this phase of the case, the chancellor, in his opinion, said: "It is true he sold the property some cheaper than some thought he should have sold it; but it is further true, under the testimony in this case, that he exercised his own judgment."

In the case of *Beebe Stave Co.* v. *Austin,* 92 Ark. 248, 122 S. W. 482, 135 Am. St. Rep. 172, it was said: "Mr. Pomeroy in his work on Equity, says: 'The doc-

trine is now well settled that mere inadequacy—that is, inequality in value between the subject-matter and the price—is not sufficient to constitute constructive fraud.' 'When the inadequacy of price is so gross that it shocks the conscience, and furnishes satisfactory and decisive evidence of fraud, it will be sufficient proof that the purchase is not *bona fide.*' 2 Pomeroy Eq. Jur., §§ 926, 927.''

The opinion of the chancellor was devoted principally to a discussion of the capacity essential to make a deed, and his opinion quotes from the case of *Atwood* v. *Ballard,* 172 Ark. 176, 287 S. W. 1001, as follows: '' 'The familiar principles of law applicable to cases of this kind have often been announced by this court. If the maker of a deed, will, or other instrument, has sufficient mental capacity to retain in his memory, without prompting, the extent and condition of his property, and to comprehend how he is disposing of it, and to whom, and upon what consideration, then he possesses sufficient mental capacity to execute such instrument. Sufficient mental ability to exercise a reasonable judgment concerning these matters in protecting his own interest in dealing with another is all the law requires. If a person has such mental capacity, then, in the absence of fraud, duress, or undue influence, mental weakness, whether produced by old age or through physical infirmities, will not invalidate an instrument executed by him.' *Pledger* v. *Birkhead,* 156 Ark. 443, 246 S. W. 510, and cases there cited. See, also, *Beaty* v. *Swift,* 123 Ark. 166, 184 S. W. 442.''

We think the court below, in the application of this test to Johnson, was warranted in finding that he possessed the mental capacity necessary to make a valid conveyance of his property; at least, we are unable to say that this finding is contrary to the preponderance of the testimony, and the decree must, therefore, be affirmed. It is so ordered.