32 F.3d 572
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In re Lance E. THOMAS, Debtor.
Eva M. HUBER, Plaintiff/Counter-Defendant/Appellant,
v.
Curtis B. DANNING, Trustee, Defendant/Counter-Plaintiff/Appellee.
 No. 93-55044.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted June 9, 1994.
Decided July 27, 1994.
 
 Before: FARRIS, O'SCANNLAIN, and TROTT, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Eva Huber appeals the decision of the Bankruptcy Appellate Panel ("BAP") affirming a bankruptcy court summary judgment which avoided her interest in certain property (the "Property") under section 544(a)(3) of the Bankruptcy Code and declared that a bankruptcy trustee (the "Trustee") holds free and clear title to the proceeds from the sale of this property.
 
 
 3
 * Huber's adversary proceeding asserted an equitable interest in the Property and its proceeds in the form of a constructive trust. Huber contends that section 544(a)(3) does not permit the Trustee to avoid a constructive trust.
 
 
 4
 We rejected this contention in In re Seaway Express Corp., where we held that, "even if it is assumed that the interest could qualify for a constructive trust, if the trustee had no actual or constructive notice of the trust under state law, the trustee takes free of that interest." 912 F.2d 1125, 1129 (9th Cir.1986) (internal quotations omitted). Recognizing this, Huber asserts that Seaway should be distinguished or called en banc. Because Huber offers no explanation of how to distinguish Seaway and does not demonstrate how Seaway 's outcome qualifies for en banc review, see Fed.R.App.P. 35(a), we reject her argument.
 
 II
 
 5
 Huber also contends that the Trustee had constructive or inquiry notice when it took an interest in the Property. In determining whether a person has constructive or inquiry notice, "the question is whether a prudent purchaser, in light of the information reasonably available to him on the date [a debtor] filed [his or her] bankruptcy petition, would have made an inquiry into the possibility that [a creditor] owned [a] residence outright." In re Weisman, 5 F.3d 417, 420 (9th Cir.1993) (applying California Civil Code section 19) (internal citations omitted). We review a bankruptcy court's conclusion regarding the existence of inquiry or constructive notice under the clearly erroneous standard. In re Professional Invest. Props. of Am., 955 F.2d 623, 626 (9th Cir.), cert. denied, 113 S.Ct. 63 (1992); In re Probasco, 839 F.2d 1352, 1355 (9th Cir.1988) ("The decision of the bankruptcy court that there was no constructive notice is based on inferences from the undisputed facts. Although ... an appellate court is equally capable of making those inferences, the dictates of judicial economy require application of the clearly erroneous standard.").
 
 
 6
 The bankruptcy court concluded that Huber had failed to adduce evidence establishing constructive or inquiry notice. Huber has introduced a variety of evidence to challenge this conclusion.
 
 
 7
 First, because Thomas did not record the Huber deed until after he had declared bankruptcy, Huber was the record title holder at the time that Thomas filed his bankruptcy petition. This fact did not create inquiry notice. A reasonable person buying the Property from Thomas would have seen that the unrecorded Huber deed came from a record title holder and, therefore, would confer valid title upon recording. Beebe Stave Co. v. Austin, 122 S.W. 482, 484 (Ark.1909), see also Cal.Civ.Code Sec. 1217 ("An unrecorded instrument is valid as between the parties thereto and those who have notice thereof.").
 
 
 8
 Second, Huber and her mother and two daughters resided on the Property until its sale. The daughters occasionally locked their bedroom doors in the main house, and her mother nearly always locked the door to the guest house, where she resided. Thomas assertedly had no keys to any of these locks.
 
 
 9
 Huber's occupancy of the Property with her family was insufficient to put a prudent person on inquiry notice. The Hubers did not enjoy exclusive possession of the Property because Thomas lived with them. Further, Thomas' extra-marital relationship with Huber gave the appearance that he and the Hubers were living together as one family. That the daughters occasionally locked their bedroom doors was in accord with this image because such conduct is consistent with the privacy desires of family members. Although the mother had the only keys to the guest house, this too is consistent with a reasonable family living arrangement.
 
 
 10
 Third, Huber asserts that the documentary transfer tax cited in the Huber deed was grossly inadequate given the net value of the Property. The deed states that the transfer of title from Huber to Thomas cost $15.40 in transfer tax. The BAP properly rejected this argument, in part, because "the documentary transfer tax disclosure does not provide clear evidence of inadequate consideration." In re Thomas, 147 B.R. 526, 530 n. 6 (9th Cir.1992). We agree. The record does not clearly identify the relationship between a transfer tax and the consideration paid for a parcel of property, such that a reasonable person would have been on inquiry notice.
 
 
 11
 AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3