[Civ. No. 686.   Third Appellate District.—May 26, 1910.]

# EDWARD J. CAMPBELL, Appellant, v. CHARLES GRENNAN and GERTRUDE C. GRENNAN, Respondents.

PURCHASE OF RECORD TITLE—GENERAL RULE.—As a general rule, where the vendor of land is in the apparent possession thereof, a purchaser of it, finding the title of record in the vendor, is put upon no further inquiry.

ID.—EXCEPTION—KNOWLEDGE OF POSITION OF HOUSES—PURCHASE SUBJECT TO OCCUPATION BY DEFENDANTS' HOUSE.—Such general rule does not apply where the purchaser knew the land for many years, and that defendants' house stood eighteen inches over the line, and that the house of the common predecessor of plaintiff and defendants stood partly over on defendants' land. The moral and legal duty was cast upon plaintiff, as purchaser, to inquire as to these patent and obtrusive facts; and his purchase of the land on which defendants' house stood was with notice thereof, and subject thereto.

ID.—AGREED OCCUPATION—DIVISION LINE—FACTS PUTTING PURCHASER UPON INQUIRY.—Where the owner of the whole lot sold the east half to defendants, and they agreed upon a division line, and defendants' house abutted thereon, and the owner's house in the rear standing on the west half stood partly on the east half, and so remained till her death, and the subsequent purchaser of the west half knew all of the facts, other than the agreement, they were of such a character as to excite the suspicion of a prudent man dealing with the property that some agreement not disclosed by the record was made by the parties owning the lot.

ID.—INEQUITY OF EJECTMENT—SERIOUS INJURY TO DEFENDANT'S HOUSE. It would be manifestly unjust and inequitable, in view of plaintiff's knowledge of the open and notorious and exclusive occupation of the land on which defendants' house stood for five years, to eject them from such occupation, to the serious injury of defendants' house.

ID.—PRESUMPTION OF PURCHASE IN VIEW OF POSSESSION.—With the knowledge possessed by plaintiff, it must be presumed that he purchased the west half of the lot in view of the defendants' possession by means of their house, to the extent of its occupation thereof.

ID.—LAND OCCUPIED BY BUILDINGS TO AGREED LINE—PRESUMPTION AS TO PURCHASE.—Where land is occupied by buildings to an agreed line, the grantee is presumed to have bought the property with a view to the boundaries visibly marked on the ground, and to have

13 Cal. App.—31

relied thereon, and fixed the price according to the value of the property as thus defined and used.

ID.—PRINCIPLES OF EQUITY AND FAIR DEALING.—Under the circumstance shown by the evidence, it would be opposed to the principles of equity and fair dealing recognized by the authorities to give effect to the bare legal title, to the extent of depriving the respondents of a right honestly acquired and continuously exercised within the observation of appellant.

APPEAL from an order of the Superior Court of Solano County, denying a new trial. L. G. Harrier, Judge.

The facts are stated in the opinion of the court.

Theodore A. Bell, for Appellant.

F. R. Devlin, for Respondents.

BURNETT, J.—The evidence shows, as stated by appellant, that defendants' house projects a little more than eighteen inches over and upon the west half of lot No. 33, in block 245, in the city of Vallejo. The defendants obtained title to the east half of this lot from one Mrs. Barr, who was the owner of the entire lot. In March, 1906, the plaintiff purchased the west half of said lot from the administrator of Mrs. Barr's estate. The lot has a frontage on York street of fifty feet between two board fences which have stood in their present location for thirty years. The defendants do not claim title to the small strip in dispute through the deed from Mrs. Barr, but predicate their claim upon an oral agreement with her by which she and the defendant, Charles Grennan, agreed upon the division line. This agreement was never reduced to writing, but it is admitted by appellant that "if this were an action between Mrs. Barr and the defendants, there is no doubt that she would be estopped from disturbing the defendants in their possession of the disputed ground, simply because she knowingly permitted defendants to hold over the line." But it is contended that the vital question in the case is: Was the plaintiff an innocent purchaser without notice? And in this connection it is urged "that from the time defendants built upon the disputed premises until the plaintiff purchased from Mrs. Barr's administrator, Mrs. Barr in her lifetime, and her administrator

thereafter, occupied and was in possession of the full twenty-five feet constituting the western half of lot 33.'' It is conceded that defendants were also in possession of the disputed strip, but the rule is invoked that requires open, notorious and exclusive possession to impute to the purchaser of the record title notice of undisclosed equities in favor of another person. The authorities seem to be uniform as to this legal proposition. It is stated in *Smith* v. *Yule,* 31 Cal. 185, [89 Am. Dec. 167], as follows: ''Where the vendor is in the apparent possession, the subsequent purchaser, finding the title of record in the vendor, is put upon no further inquiry, because the possession appears to be according to the title; and if at the same time another person is also in possession, there is no presumption of title in him inconsistent with that found in the vendor. . . . The subsequent purchaser is not justly chargeable with fraud in failing to make inquiry for a prior unrecorded conveyance, unless there is some fact or circumstance apparent to his observation, calculated to excite the suspicion of a prudent man dealing with the property, that a prior conveyance has been made. The existence of such a conveyance would not be suggested by the possession of a third person, while the vendor held the title appearing of record and was in the apparent possession.'' Other cases are cited to the same effect. It is urged by respondents, however, that the rule finds no application to the facts of this case. Attention is called to the evidence showing that ''appellant was familiar with the premises for a period of nearly forty years. He knew that Grennan had purchased one-half of the lot. He knew that Grennan, during the time of construction, was erecting a building upon the half of the lot claimed by him, and he knew that Grennan was living alone with his own family in the house he had erected and that there was no division of possession between himself and Mrs. Barr.''

Upon the assumption that the foregoing quotation from respondents' brief is a full statement of the facts, it could not be gainsaid that respondents' position is entirely sound. The problem, though, is somewhat affected by the circumstance that a short time before respondents' house was erected Mrs. Barr moved her residence from the center of the lot to the rear of the same and located it so that it projected

over the agreed division line and easterly of the center of said lot.

The case, then, in brief, is this: B. owns the entire lot and sells the easterly half to G. They agree upon the division line and G. erects a residence abutting thereon. To enable him to do this B. moves her residence to the rear and leaves it partly upon G.'s property. This she occupies until the time of her death. G. and his family are the sole occupants of his residence for five years, when C., with a knowledge of all the facts, except the said agreement between B. and G., purchases the legal title to the westerly half of said lot, which includes, as we have seen, a strip about eighteen inches in width east of the said agreed line. If appellant is awarded possession of said strip respondents will be greatly damaged, or, as testified by one of the latter: "If I am compelled to move that part of my building which the plaintiff claims is on his part of the lot, I will have to cut off about eighteen inches of my house—it would practically ruin the house. It would take off the roof and part of the room that projects eighteen inches over the line claimed by plaintiff; it would certainly injure the building if that part of it were removed."

Under such circumstances what does equity require? We think there can be reasonably but one answer to the question. The moral and legal duty was cast upon appellant to make inquiry concerning these patent and obtrusive circumstances. The knowledge that respondents were building and occupying exclusively a dwelling upon the disputed tract and thus exercising acts of ownership would arrest the attention and challenge the investigation of any prudent person contemplating the purchase of the property. The peculiar location of the other building in the rear of the lot also would naturally excite comment and lead to inquiry. These two facts and circumstances were apparent to appellant's observation, and were both calculated to excite the suspicion of any prudent man that some agreement not disclosed by the record was made by the parties owning the lot. At any, rate, it is undisputably true that respondents were in the open, notorious and exclusive possession of the portion of the lot covered by their dwelling, and the presumption follows that their ownership was coextensive with the claim thereby asserted, and

of this appellant was clearly put upon notice. It would be manifestly unjust, therefore, to eject respondents from the portion of the lot actually occupied by them. But the question in relation to the whole strip has been treated as one and indivisible and involving the same situation, and therefore the judgment in favor of respondents should not be disturbed. With the knowledge possessed by plaintiff it must be presumed that he purchased the west half of the lot in view of respondents' possession.

Where land is occupied by buildings up to the agreed line, the grantee is presumed to have bought the property with a view to the boundaries thus visibly marked, and to have relied thereon and fixed the price according to the value of the property as thus defined and used. (*Young* v. *Blakeman,* 153 Cal. 483, [95 Paè. 888].)

The cases cited by appellant clearly involve a different situation from what we have here. In the Smith case, *supra,* the vital fact is disclosed.in the statement given in the syllabus: "If the owner of a lot in a city occupies part of a house on the same, and another person occupies the remainder of the house, and while this occupation of both continues the owner conveys to this other person whose deed is not recorded, and then conveys to a third person whose deed is first recorded, the possession of the one having the unrecorded deed is not sufficient to give notice to the subsequent purchaser," and this, for the reason that the possession appears to be according to the title.

In *Taylor* v. *Central Pac. R. R. Co.,* 67 Cal. 615, [8 Pac. 436], it was held upon conflicting evidence that the claimant had not settled upon nor improved the land in controversy, and it appeared that the subsequent applicant had no knowledge that any portion of the land had been inclosed by plaintiffs or that they had made any application for the purchase thereof, the contest involving the question as to whether plaintiffs or the defendant Davis should be preferred as the purchaser of certain land belonging to said company.

In *Shumacher* v. *Truman,* 134 Cal. 431, [66 Pac. 591], it was held that "the possession of a tenant of the divorced husband after· the decree of divorce must be presumed to be the possession of the divorced wife, as a tenant in common

with him, and is consistent with and not adverse to the record title of the divorced wife, and did not put the purchaser from her upon inquiry as to any equitable rights of the divorced husband under the unrecorded agreement." This, of course, must follow from the principle that either of the cotenants was entitled to the possession of the whole of the land as against everyone except his cotenant and that the possession of one cotenant is presumed to be for his benefit and also for that of his cotenant. His possession or that of his tenant would therefore be no notice of any hostility to the title of his cotenant.

In *Harris* v. *McIntyre et al.*, 118 Ill. 275, [8 N. E. 182], it appears that the owner of the legal title was permitted "to exercise, so far as the public could see, exclusive control and management of the farm and its products," without objection by the claimant of the equitable title, or the assertion of any right on her behalf, "while she to all appearances was simply the housekeeper for her brother, and as far as shown by the proof, apparently, to the world, occupied the premises in no other capacity."

In the case of *Lindley* v. *Martindale*, 78 Iowa, 379, [43 N. W. 233], the title to the lands was in a son of the plaintiff, who resided on a portion of them, while plaintiff and her husband resided on another portion, but the lands had for a long time been cared for by both the husband and the son. It was justly held that one who, upon being told that the title was all right in the son, took a mortgage from the son to secure a loan which was used for the most part to pay off prior encumbrances placed on the land by the son, was not charged with the alleged equities of plaintiff by reason of her claimed possession of the land. Since the son exercised acts of ownership jointly with his father, it negatived any inference that might arise from the existence of separate residences. Besides, it was decided that the plaintiff was estopped by her conduct from setting up the claim of any equitable interest in the premises.

In *Atwood* v. *Bearss*, 47 Mich. 72, [10 N. W. 112], it was held that the fact that the husband lived on the premises with his wife did not constitute notice of an unrecorded deed from her to him.

*Wells* v. *Am. Mort. Co.,* 109 Ala. 430, [20 South. 136], is to the same effect, where it is declared that "The possession of land by the grantee, holding under an unrecorded deed together with her grantor, is not constructive notice of the unrecorded deed to a subsequent purchaser."

In *Pope* v. *Allen,* 90 N. Y. 298, it also appeared that both defendant and P. lived upon the land at the time of the conveyance to plaintiff and apparently occupied it jointly. Plaintiff had no actual notice of defendant's rights. "Held, that as P. had the record title the proper inference was that defendant's possession was under him and in subordination to his title."

*McCarthy* v. *Nicrosi,* 72 Ala. 332, [47 Am. Rep. 418], and *Townsend* v. *Little,* 109 U. S. 504, [3 Sup. Ct. Rep. 357], likewise present the situation of a joint occupancy.

Here, under the circumstances shown by the evidence, it would be opposed to the principles of equity and fair dealing recognized by the authorities, to give effect to the bare legal title to the extent of depriving respondents of a right honestly acquired and continuously exercised within the observation of appellant.

The order denying the motion for a new trial is affirmed.

Hart, J., and Chipman, P. J., concurred.