[Civ. No. 18902.   First Dist., Div. Two.   Sept. 6, 1960.]

GENERAL CASUALTY COMPANY OF AMERICA (a Corporation), Plaintiff and Appellant, v. Y. C. SODA et al., Defendants and Appellants.

Nathan G. Gray for Plaintiff and Appellant.

Bohnert & McCarthy for Defendants and Appellants.

DRAPER, J.—Asserting that the deed under which defendants claim title to land in Contra Costa County was in

fact a mortgage, plaintiff brought this action to quiet title to lots still held by defendants, and for money judgment for the proceeds of lots theretofore sold by them. Defendants claimed that their deed was in fact absolute, and also relied upon a release claimed to amount to a surrender of the equity of redemption if the transaction were in fact a mortgage. They asserted further that plaintiff's apparently absolute deed was itself but a mortgage. Their cross-complaint sought to quiet title in them. Judgment was for plaintiff. Defendants appeal from the judgment as a whole. Plaintiff appeals, asserting that a larger amount should have been allowed.

Both deeds in question are absolute in form. Both were made by Osage Development Company, one of a number of corporations wholly owned by T. R. Bechtel and Marvin Sherwin. Bechtel, Sherwin, and their several corporations had been engaged in real estate subdivision and development projects in and about Hayward, and defendants Soda, directly or through corporations owned by them, had largely financed these transactions. As to Tract 1032 in Hayward, the Sodas took title to the land as security, and as each house was sold conveyed title to a Bechtel-Sherwin corporation which in turn deeded to the buyer. Late in 1950, Bechtel and Sherwin owed the Sodas more than $100,000. They had other creditors. They proposed to pay one of these by deeding two lots in Tract 1032 to him. There is testimony that the Sodas refused to release these two lots, and that Bechtel-Sherwin then agreed to transfer the 10 Danville lots here in issue as "substitute security." The Sodas then deeded the two Hayward lots to a Bechtel-Sherwin corporation, and Osage deeded the 10 Danville lots to the Sodas by deed dated December 12, 1950 and recorded January 25, 1951. Each of these deeds contains on its face the statement "consideration less than $100." In fact, Soda testified that the two Hayward lots were worth $2,400 to $3,000. Bechtel-Sherwin had paid $17,500 for the 10 Danville lots.

On May 8, 1951, some five months after date of this deed, the Sodas and their several corporations, on the one hand, and Bechtel-Sherwin and their several corporations (including Osage Development Company) on the other, entered into a mutual release. The Sodas, as part of this transaction, paid Bechtel-Sherwin $33,000 and took over all remaining interest in the Hayward tracts. The four paragraphs of recitals in the mutual release, as well as one paragraph effectuating the release, refer to named tracts of land in Hayward, including

Tract 1032. The final paragraph states ''This release constitutes a full and complete release and settlement of every transaction between the parties herein named, except for the following:'' The word ''none'' and Bechtel's initials appear in the blank following. It is this release which defendants assert to be a relinquishment of Osage's right of redemption of the Danville lots, if the deed to defendants is held to be a mortgage.

In August, 1951, Bechtel-Sherwin were indebted to plaintiff. On August 8 Osage executed a grant deed to plaintiff. This deed was recorded September 10, 1954. Sherwin testified that it was delivered with intent to transfer full title. August 14, 1951, Bechtel-Sherwin executed an assignment to plaintiff which will be discussed later.

Defendants-appellants first argue that the evidence is insufficient to support the finding that the deed from Osage to them was intended solely as security.

While clear and convincing evidence is required to establish that a deed absolute in form is in fact given as security, the question whether the evidence is clear and convincing is for the trial court. Here, as in other cases, the finding will be sustained on appeal if there is substantial evidence to support it (*Beeler* v. *American Trust Co.,* 24 Cal.2d 1, 7 [147 P.2d 583]).

The two Hayward lots which defendants claim were the consideration for the deed of the Danville property were themselves held by defendants solely as security. After the Danville lots were deeded to defendants, creditor-debtor relationship between them and Bechtel-Sherwin continued. This is strong evidence that the deed was for security only (*Jensen* v. *Friedman,* 79 Cal.App.2d 494, 501 [179 P.2d 855]). Also, the evidence that the Danville property was worth several times the value of the Hayward lots is significant (*Husheon* v. *Husheon,* 71 Cal. 407, 412-413 [12 P. 410]). The recital in the two deeds that each was for a consideration less than $100, and the testimony of Sherwin, viewed as a whole, similarly support the finding. We are satisfied that there is substantial evidence to sustain the finding of the trial court that the deed to defendants was intended as security only.

As to the deed from Osage to plaintiff, defendants' principal argument is that an assignment executed by Bechtel, Sherwin and Osage to plaintiff, some six days after the deed was executed, established that the deed was for security only. This assignment recites indebtedness of Bechtel and Sherwin

to plaintiff in the sum of $12,000 plus attorneys' fees and costs, provides that other indebtedness may accrue under a performance bond issued by plaintiff for T. R. Bechtel Co., for which that corporation, Bechtel and Sherwin are indemnitors, and assigns all interest of Bechtel, Sherwin and Osage in the Danville lots to plaintiff "as security for said indebtedness." This assignment is ambiguous as to Osage, since it does not show that corporation to be indebted to plaintiff. There is parol evidence that the deed was, despite the assignment, intended to convey title, and that the assignment was for the purpose of assuring that all interest of Bechtel and Sherwin as individuals was transferred to plaintiff. There is like evidence that the assignment was intended to assure that the deed did not exonerate Bechtel and Sherwin for more than $12,000. On the record as a whole, we cannot say that the evidence is insufficient to support the finding that the deed was intended to convey the interest of Osage absolutely rather than as security.

Finally, defendants contend that the mutual release dated May 8, 1951, relinquishes any equity of redemption Osage may have had as against defendants. The trial court found that the release did not relate to the Danville property and is not a waiver or relinquishment of the right of redemption. An agreement that what was originally a mortgage shall be deemed an absolute deed will be sustained only where the creditor shows that the right of redemption was given up deliberately (*Bradbury* v. *Davenport*, 114 Cal. 593, 600 [46 P. 1062, 55 Am.St.Rep. 92]). The release here in issue refers, in every paragraph save the final one, to the Hayward tracts in which the Soda and Bechtel-Sherwin interests had dealt. Nowhere does it refer to the Danville property. It is only by construing the general release of the last paragraph to extend to the Danville right of redemption, despite the failure of the document as a whole to refer to any property in Contra Costa County, that the effect contended for by defendants can be found. The record affords basis for the inference that the release related to moneys owing, rather than to real property interests. Sherwin testified that he had forgotten about the Danville lots when the release was signed. Soda thought that the lots had been discussed in negotiations for the release, but was not certain. In the light of the document itself, Soda's testimony is not sufficient to meet the test required to show that the release relinquished Osage's equity of redemption. The trial court's finding that no such re-

linquishment was included in the release is fully supported. Since there is no question that the Bechtel-Sherwin indebtedness to defendants has been fully discharged, title revested in Osage, and supports the deed to plaintiff.

Plaintiff's appeal concerns the money judgment only. Three of the 10 Danville lots were sold by defendants before this action was filed, and a fourth was sold pursuant to stipulation after the action was commenced. The three lots were sold for $8,350, but taxes and costs of sale amounted to $1,785.68. Judgment was for the net amount of these sales, plus net proceeds of the stipulated sale.

Plaintiff contends that since defendants have been held to have no title to the property, they should be held liable for the full value of the lots sold, without deduction (except for the lot sold by stipulation) for taxes paid or for costs of sale (*McNulty* v. *Copp*, 125 Cal.App.2d 697 [271 P.2d 90]; *Dinkins* v. *Lamb*, 108 Cal.App.2d 175 [238 P.2d 630]). But in the first of these cases, the unsuccessful claimant was found to have asserted her claim with fraudulent intent. In the second, the unsuccessful claimant based her asserted right upon a deed not given to her until after the opposing party's valid deed was of record. But here defendants, in paying the taxes, were not mere volunteers (*District Bond Co.* v. *Pollack*, 19 Cal.2d 304, 307 [121 P.2d 7]). They had a security interest to protect. As to the costs of sale, there is no suggestion that they acted fraudulently. There is no assertion that the prices obtained were less than reasonable value, or that the costs were greater than the normal. In these circumstances, the trial court was well within its equity powers in refusing to charge defendants with payment to plaintiff of amounts they had already paid out to plaintiff's benefit. (*Dool* v. *First National Bank*, 207 Cal. 347 [278 P. 233].)

The judgment and the order refusing to vacate it, from which plaintiff appeals in asserting inadequacy of damages, are affirmed.

Kaufman, P. J., and Shoemaker, J., concurred.