In re Lance E. THOMAS, Debtor.

Eva M. HUBER, Appellant,

v.

Curtis B. DANNING, Trustee, Appellee.

BAP No. CC–91–1889–VPMe.
Bankruptcy No. LA88–24491–SB.
Adv. No. AD90–02331.

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted Feb. 19, 1992.

Decided Dec. 3, 1992.

R. Gibson Pagter, Jr., Santa Ana, Cal., for appellant Eva Huber.

Eric P. Israel, Los Angeles, Cal., for appellee Curtis Danning, Trustee.

Before VOLINN, PERRIS, and MEYERS, Bankruptcy Judges.

## OPINION

PERRIS, Bankruptcy Judge:

Appellant Eva Huber ("Huber") appeals the bankruptcy court's summary judgment avoiding, under 11 U.S.C. § 544(a)(3),[1] Huber's interest in real property to which she held record title at the time of debtor Lance Thomas's bankruptcy filing and declaring that the debtor's Chapter 7 trustee, Curtis B. Danning ("the Trustee"), holds free and clear the proceeds from the sale of the property. We AFFIRM the bankruptcy court's decision.

## FACTS

In July 1988, Huber resided at 2861 Club Drive, Los Angeles, California ("the property"), which, according to Huber's representations, was worth approximately $850,000 and encumbered by liens totalling approximately $500,000. The property was a single family residential dwelling with a separate guest house in the back. At all pertinent times, the debtor lived at the property with Huber, the two being involved in an extra-marital relationship. The debtor, Huber and her two teenaged daughters lived in the main house on the property and Huber's mother lived in the guest house.

On August 1, 1988, Huber executed a grant deed which purported to convey the property to the debtor ("the Huber deed"). The debtor testified that Huber executed the grant deed in exchange for his promise that he and Huber would live on the property until the two daughters had graduated from high school. Huber contends that she executed the grant deed, which the debtor promised not to record, as security for the debtor's loan to her of approximately $26,000. Huber was to repay the loan in $2500 monthly installments under the terms of an August 10, 1988 lease agreement pertaining to the property. The lease agreement

---

1. All section references are to the Bankruptcy Code, 11 U.S.C. §§ 101, *et seq.*, unless the context otherwise indicates.

identifies as the landlord Howard Gunderson, a real estate broker and friend of the debtor, who had loaned the debtor nearly $200,000. ⌐nbeknownst to Huber, on August 10, 1988, the debtor executed a grant deed which purported to convey the property to Gunderson. Gunderson never recorded the deed.

On November 21, 1988, Thomas filed his bankruptcy petition without listing either the property or any other assets on his bankruptcy schedules. The Trustee filed a no asset report on January 23, 1989, and the court closed the case on April 11, 1989.

Meanwhile, on January 25, 1989, the debtor recorded the Huber deed and executed another grant deed purporting to convey the property to Gunderson, which Gunderson recorded on January 27, 1989. After Huber contacted a real estate agent for the purpose of listing the property for sale, she learned that Gunderson held the record title to the property. Huber then filed an action against Gunderson in state court seeking the imposition of a constructive trust on the property and any proceeds therefrom. Huber subsequently entered into a compromise with Gunderson and Thomas regarding the distribution of the proceeds of the proposed sale at a price of $930,000.

Huber learned of the debtor's bankruptcy case during the state court proceeding. After Huber notified the Trustee that she intended to close the sale of the property, he requested, and the bankruptcy court ordered the reopening of the case on August 7, 1989. Pursuant to a stipulation dated August 24, 1989 and an order thereon, the Trustee sold the property to a third party and the interests of the Trustee, Huber and Gunderson attached to the net proceeds of the sale, $250,000.[2]

Huber commenced an adversary proceeding to impose a constructive trust on the proceeds. The Trustee filed a cross-complaint seeking the avoidance of Huber's interest in the property under section 544(a)(3) and a declaratory judgment that the Trustee holds the proceeds free and clear of Huber's interest. The bankruptcy court granted summary judgment in favor of the Trustee on both claims for relief. Huber filed this timely appeal.

## ISSUES

The ultimate issue in this appeal is whether the bankruptcy court erroneously avoided Huber's interest in the property under section 544(a)(3). Our resolution of this issue turns upon the following two sub-issues:

1. Whether section 544(a)(3) may be used to avoi⌐ ⌐y interest in the property that Huber may hold as beneficiary of a constructive trust.

2. Whether the bankruptcy court correctly determined that the Trustee lacked constructive notice of Huber's interest in the property.

## STANDARD OF REVIEW

 We review *de novo* the bankruptcy court's decision to grant summary judgment. *See In re Marino,* 813 F.2d 1562, 1564–65 (9th Cir.1987). In this regard we must view the evidence in a light most favorable to the nonmoving party and determine whether there are any genuine issues of material fact and whether the bankruptcy court correctly applied the relevant substantive law. *Id.*

## DISCUSSION

1. *Whether section 544(a)(3) may be used to avoid any interest in the property that Huber may hold as beneficiary of a constructive trust.*

Under section 544(a)(3), a trustee may avoid any transfer of property or obligation that would be avoidable under state law by a bona fide purchaser of real property, whether or not such a bona fide purchaser actually exists.[3]

---

**2.** In December of 1989, the Trustee prevailed in his adversary proceeding seeking to avoid Gunderson's interest in the proceeds.

**3.** Section 544(a)(3) provides, in pertinent part, as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to

■ Huber contends that section 544(a)(3) cannot apply to avoid her claimed interest because that section allows the avoidance of transfers and in this case there has been no transfer by the debtor to which section 544(a)(3) can apply. We find Huber's contention unpersuasive. Ninth Circuit authority makes clear that without regard to whether the defendant is the recipient of a transfer from the debtor, section 544(a)(3) allows a trustee to avoid the defendant's equitable interest in property. *See In re Seaway Express Corp.*, 912 F.2d 1125 (9th Cir.1990); *In re Tleel*, 876 F.2d 769 (9th Cir.1989). In rejecting a similar contention, the court in *Seaway Express* stated: "Although the section empowers the trustee to avoid transfers, by its terms it also applies if no transfer has taken place." 912 F.2d at 1129–1130.

In this case, at the time the debtor filed his bankruptcy petition, he held an unrecorded grant deed to the property, by virtue of which the estate had an interest in the property. Huber claims an equitable interest in the property arising from the circumstances surrounding the execution of the grant deed. Despite the fact that Huber did not obtain her interest in a transfer from the debtor, cases such as *Seaway Express* and *Tleel* make clear that section 544(a)(3) applies to the Trustee's attempts to avoid her interest.

■ Huber also argues that section 544(a)(3) cannot apply because the property is impressed with a constructive trust and, as such, it is not property of the estate under section 541(d), to which a trustee's avoidance powers may apply. While some case authorities support Huber's conten-

tions, *see In re Quality Holstein Leasing*, 752 F.2d 1009, 1013 (5th Cir.1985), the Ninth Circuit has specifically rejected this reasoning.[4] *See Seaway Express*, 912 F.2d at 1128–29; *Tleel*, 876 F.2d at 772–73. Under the law in this circuit, section 541(d) does not stand as a bar to the avoidance of an equitable interest, including a constructive trust interest, in real property under section 544(a)(3). *Id.* Rather, section 544(a)(3) allows the trustee to avoid such interests to the same extent that they could be avoided by a bona fide purchaser under state law.

■ Under California law, a bona fide purchaser without actual or constructive notice takes free of a prior equitable interest or constructive trust interest. *Rafftery v. Kirkpatrick*, 29 Cal.App.2d 503, 507–508, 85 P.2d 147, 150 (1938); *see Tleel*, 876 F.2d at 771–72. Section 544(a)(3) makes a trustee's actual knowledge irrelevant. *See Tleel*, 876 F.2d at 772. Constructive notice, however, will preclude avoidance under section 544(a)(3). *In re Probasco*, 839 F.2d 1352, 1354–55 (9th Cir.1988). Whether the Trustee can avoid Huber's constructive trust interest[5] in the property under section 544(a)(3), therefore, turns upon whether the Trustee had constructive or inquiry notice of that interest.

2. *Whether a disputed issue of material fact precluding summary judgment exists on the question of whether the Trustee lacked constructive notice of Huber's interest in the property.*

Huber argues that under California law the Trustee would not prevail as a bona fide purchaser because he had constructive

---

any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— ...

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

**4.** The dissent relies upon *In re Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir.1985). *Tleel* and

*Seaway Express* specifically rejected the reasoning of *Quality Holstein Leasing* and similar cases pertaining to the interplay between sections 541(d) and 544(a)(3). In attempting to reconcile the reasoning of *Quality Holstein Leasing* with Ninth Circuit authority, we believe that the dissent reads these cases too broadly.

**5.** As did the bankruptcy court, for purposes of our decision, we will assume without deciding that a constructive trust arose from the circumstances surrounding the execution of the grant deed.

notice of Huber's equitable interest in the property. Huber argues that such constructive notice was provided by the fact that she lived on the property along with her mother and her daughters, who usually locked the doors to their rooms, and by the fact that the real property records on the date of the petition indicated that Huber held record title.[6]

A party has constructive or inquiry notice of another's interest in property when he or she has knowledge of circumstances or a condition of the property that would prompt a prudent person to inquire about the other's interest and the prosecution of the inquiry would have revealed the other's interest. *See* Cal.Civ.Code § 19 (West 1982); 3 Harry D. Miller & Marvin B. Starr, *California Real Estate* §§ 8:62, 8:63, 8:65 (2d ed. 1989) (hereafter *"Miller & Starr "*). Proper recordation of an interest in real property imparts constructive notice of that interest. *E.g.,* 4 B.E. Witkin, *Summary of California Law* Real Property § 203 (1987). In addition, possession or occupancy of real property that is open, notorious, exclusive and inconsistent with the title to the property provides constructive notice of the occupant's interest in the property. *E.g., Claremont Terrace Homeowners' Ass'n v. United States,* 146 Cal. App.3d 398, 408, 194 Cal.Rptr. 216, 222 (1983); *Miller & Starr,* §§ 8:65–8:66; *see Probasco,* 839 F.2d at 1354–56. Such possession obliges a purchaser to inquire into the possessor's interest and provides constructive notice of the facts that would be revealed by such an inquiry. *Id.*

Turning to the facts of this case, as of the date of the petition, the debtor had an unrecorded grant deed from Huber. The fact that the deed was not recorded did not prevent the debtor from taking legal title to the property and would not prevent the debtor from conveying title to a bona fide purchaser, unless the circumstances would provide a purchaser with constructive notice of Huber's interest.[7]

The fact that the debtor failed to record the Huber deed prior to the petition and Huber, therefore remained the title holder in the real property records is not, by itself, sufficient to impart constructive notice of Huber's interest. A prudent purchaser would see that the debtor held a deed from the record title holder. That the deed was not recorded is not, by itself, a suspicious circumstance requiring investigation or imparting constructive notice. *See Beebe Stave Co. v. Austin,* 92 Ark. 248, 122 S.W. 482, 484 (1909); 77 Am.Jur.2d *Vendor and Purchaser* § 665 (1975).

A more difficult question is whether the circumstances surrounding Huber's occupancy of the property, along with the occupancy of her mother and daughters, provides constructive notice of her interest. The difficulty lies in determining whether, in light of the fact that the debtor also resided on the property, this occupancy is consistent with the debtor's title to the property. If such possession is consistent with the debtor's title then it will not raise the duty to inquire or

6. In arguing that the deed from Huber to the debtor was intended as security rather than an outright transfer, Huber contends that a factor in that determination is that the documentary transfer tax reflected on the deed evidences a "sale price" considerably less than the value of the property. While Huber does not contend that this factor provides constructive notice of her interest, such gross inadequacy of consideration has been a factor considered by some courts in making a constructive notice determination. *See Asisten v. Underwood,* 183 Cal. App.2d 304, 310, 7 Cal.Rptr. 84, 87 (1960). Because Huber did not raise this issue in the bankruptcy court and because the documentary transfer tax disclosure does not provide clear evidence of inadequate consideration, we decline to rely upon this factor in determining

whether the Trustee had constructive notice of Huber's interest.

7. The dissent places great reliance on the fact that the deed from Huber to the debtor was not recorded. The dissent, however, cites no authority suggesting that a party's interest in real property must be recorded before that interest may be conveyed to a bona fide purchaser.

Similarly, the fact that the debtor conveyed the property to Gunderson by an unrecorded deed prior to the petition would not prevent the debtor from conveying the property to a bona fide purchaser. The authorities discussed above would protect a bona fide purchaser from any interest Gunderson obtained through the prior unrecorded sale.

impart constructive notice. *See Three Sixty Five Club v. Shostak,* 104 Cal.App.2d 735, 738, 232 P.2d 546, 548 (1951); *Miller & Starr,* § 11:55.

Many courts have determined that when the title holder jointly occupies property with a stranger to title claiming an interest in the property, the occupancy by the stranger to title does not provide constructive notice of his or her interest. *Rafftery v. Kirkpatrick,* 29 Cal.App.2d 503, 506, 85 P.2d 147, 149–150 (1938); *Campbell v. Grennan,* 13 Cal.App. 481, 483, 110 P. 156, 157 (1910); *Miller & Starr,* § 11:60; *Rankin v. Coar,* 46 N.J.Eq. 566, 22 A. 177, 178–79 (1890); *see Kane v. Huntley Financial,* 146 Cal.App.3d 1092, 194 Cal.Rptr. 880 (1983). In such circumstances, the law regards possession as being with the title holder and there is no presumption of an interest of the joint occupant inconsistent with the title in the other joint occupant. *See Campbell v. Grennan,* 110 P. at 157; *Cameron v. Romele,* 53 Tex. 238, 244 (1880). This general rule is often applied when the joint occupants are related to one another. *See, e.g., Kirgan v. Kirgan,* 123 Mont. 34, 207 P.2d 557 (1949). Similarly, this general rule has also been applied when, as in this case, the grantor is a joint occupant with the grantee. *See Swanstrom v. Day,* 46 Misc. 311, 93 N.Y.S. 192, *aff'd without op.,* 101 App.Div. 609, 92 N.Y.S. 1147 (1905).

In this case, Huber and her relatives jointly occupied the property with the debtor, who also held the title to the property. Huber's occupancy, along with that of her relatives, is not inconsistent with the debtor's title. Given the fact that Huber and the debtor were living together in an extramarital relationship, a reasonable person viewing the property would see what amounted to a family type of living arrangement that was entirely consistent with the debtor being the owner of the property. The fact that Huber's daughters and mother often locked the doors to their rooms would not alter this conclusion because it is not unusual that members of a family may limit the access of other family members to particular parts of a residence. Such limitations are not the same as when unrelated parties separately and exclusively occupy different parts of real property. Such limitations are consistent with a family or quasi-family living arrangement and would not excite suspicion or raise a duty to inquire.

Moreover, even if a duty to inquire would be raised by the locked rooms, an inquiry would disclose that Huber's mother and daughters occupied the locked portions of the property, which, as discussed above, was entirely consistent with the debtor's title. In addition, if a prudent purchaser was told that Huber owned the property upon making inquiry of the occupants of the locked rooms, a prudent purchaser would then see that Huber had, by the deed in question, conveyed her interest to the debtor. What would be disclosed by the inquiry would be consistent with the debtor's title under the circumstances of this case.

The crucial question in this appeal is whether a prudent purchaser would, under the circumstances of this case, be required to question Huber concerning title to the property. For the reasons set forth above, we believe that a prudent purchaser would not be required to question Huber and that the facts of this case would not impart constructive notice to a bona fide purchaser or to the trustee.[8]

## CONCLUSION

Because the Trustee lacked constructive notice of any interest in the property that Huber may hold as beneficiary of a con-

---

**8.** We disagree with the dissent's contention that there is a disputed issue of material fact on this question. The essential facts which, Huber contends, impart constructive notice are not in dispute. The only question is whether those undisputed facts are sufficient to impart notice.

We also disagree with the dissent's reliance upon *In re Professional Investment Properties,*

955 F.2d 623 (9th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 63, 121 L.Ed.2d 31 (1992), for the proposition that the bankruptcy petition provided constructive notice to the trustee of Huber's interest. In this case, unlike *Professional Investment Properties,* the petition made no mention of Huber's interest in the property.

structive trust, the Trustee may avoid that interest pursuant to section 544(a)(3).[9] We therefore AFFIRM bankruptcy court's summary judgment in favor of the Trustee.

VOLINN, Bankruptcy Judge, dissenting:

## FACTUAL AND PROCEDURAL BACKGROUND [1]

In July 1988, appellant Eva Huber (Huber), her two teenaged daughters, and her mother resided in Los Angeles at their home, known as the Club Drive property, which was valued at approximately $850,-000. There were liens against the property totaling approximately $500,000. Huber and her daughters lived in the house and her mother lived in a separate dwelling at the rear of the property. Huber met the debtor, Lance Thomas (Thomas), a buyer, seller, and repairman of vintage watches. According to Thomas, they became lovers and he moved into the Club Drive property.

On August 1, 1988, Huber executed a grant deed on the property to Thomas. In deposition testimony, Thomas asserted that Huber gave him the grant deed in exchange for his promise that he and Huber would live on the property until the two daughters had graduated from high school. Huber states that she intended to give Thomas a security interest in the property in exchange for a loan of $26,000. Thomas promised not to record the deed.

Unbeknownst to Huber, Thomas, on August 10, 1988, within days after obtaining the deed from her, executed a grant deed of the property to Howard Gunderson. Gunderson was a real estate broker, business associate, and friend of Thomas, from whom Thomas had allegedly borrowed approximately $245,000 for the purpose of forming and promoting a company to conduct harness racing in California. The consideration for the deed was the alleged $245,000 debt owed by Lance to Gunderson. Gunderson also did not record this deed. On August 10, 1988, Gunderson and Thomas entered into a lease agreement by which Thomas as lessee was to pay $2,500 per month for the Club Drive property. Huber was not a party to the lease.

On November 21, 1988, Thomas, having taken title to and disposed of Huber's property, filed his bankruptcy petition without listing either the Club Drive property or any other assets on his bankruptcy schedules. The trustee's no asset report was filed on January 23, 1989, and the case was closed on April 11, 1989. Two days after the no asset report was filed, on January 25, 1989, Thomas recorded the August 1, 1988 grant deed from Huber. On the same day he executed another grant deed to Gunderson, which Gunderson recorded on January 27, 1989.

In January 1989, Huber contacted a real estate agent for the purpose of listing the Club Drive property for sale. While checking the property for liens, the agent learned and informed Huber that Gunderson held record title to the property. Thereafter, Huber retained counsel and commenced an action in state court against Gunderson to set aside his deed. Ultimately she entered into a compromise with Gunderson and Thomas relative to the distribution of the proceeds from a proposed sale at a price of $930,000. Huber's attorney also contacted Thomas's bankruptcy trustee relative to the sale of the property. The trustee moved to reopen the bankruptcy case; an order to reopen was entered on August 7, 1989, and a trustee was reappointed. Eventually the property was sold, and pursuant to stipulation, the claims of the various parties attached to the $250,-000.00 net sale proceeds.

The trustee proceeded with an action in bankruptcy court to set aside Gunderson's claim of interest in the property and was granted summary judgment on December 18, 1990. The trial court held that the

---

9. Because we determine that the Trustee may avoid any interest held by Huber under section 544(a)(3), we need not and do not address the contention that the postpetition recordation of the Huber deed cuts off any interest that Huber may claim in the property.

1. This is a summary judgment proceeding brought on by the trustee and the statements of the party moved against (Huber) are to be taken as true. *In re New England Fish Co.*, 749 F.2d 1277, 1280 (9th Cir.1984).

claim of the estate to Huber's net proceeds was paramount to that of Huber.

The following chronology outlines the shifting status of record title:

August 1, 1988: Huber deeds to Thomas. The deed is not recorded at the time.

August 10, 1988: Thomas deeds the property to Gunderson. The deed was not recorded.

November 21, 1988: Thomas files bankruptcy. The Club Drive property is not listed in the schedules. Thomas, in a deposition taken by the trustee, stated that he did not list the property because ninety days had gone by since the original transfer.

January 23, 1989: The trustee files a no asset report.

January 25, 1989: Thomas executes a second deed in favor of Gunderson.

January 27, 1989: Gunderson records the January 25 deed.

Feb. 24, 1989: Huber, having discovered Gunderson's recorded deeds in the course of a prospective sale of the property, institutes a state court action to recover the property.

Feb. 27, 1989: Huber records Notice of Pending Action relating to above suit with office of L.A. County Recorder.

August 7, 1989: Trustee reopens case.

Dec. 8, 1990: Trustee obtains summary judgment avoiding Gunderson's deed and vesting title to the property in the estate.

## ISSUES

As indicated by the majority, there are two issues: First, whether the strong-arm clause, 11 U.S.C. § 544(a)(3), may be used to avoid Huber's interest in the property, and second, whether the bankruptcy court correctly determined that the trustee did not have constructive notice of Huber's interest in the property.

## I. APPLICABILITY OF SECTION 544(a)(3)

This section provides in pertinent part as follows:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by— ...

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

As can be seen from the foregoing summary of events affecting title, on the date of bankruptcy, the trustee had no interest in the property. Ultimately, Gunderson, as a result of the dealings with Thomas, became vested with record title. While the ostensible transfers resulted from Thomas's betrayal of Huber, and subject to question by her, they were effective as to the trustee until he avoided them as to Gunderson. It was only as the result of the trustee's post-bankruptcy action against Gunderson that the latter's interest was avoided and vested in the trustee. At this point, *after* the commencement of bankruptcy, the trustee took title to the property in place of Gunderson.

It should be noted that Huber's claim is essentially that Thomas, by holding the deed as security, held only bare legal title as against her substantial equitable interest. The trustee was presumably in the same position, holding an unrecorded deed of trust on the date of bankruptcy. Gunderson, who claimed through Thomas, certainly knew of Huber's prior claim of paramount interest.

Section 541(d) provides that:

Property in which the *debtor* holds, as of the commencement of the case, only legal title and not an equitable interest, ... becomes property of the estate under subsection (a)(1) or (2) of this section only to the extent of the *debtor's* legal title to such property, but not to the extent of any equitable interest in such property

that the *debtor* does not hold. (emphasis supplied)

Since this proceeding has been presented in the context of motion for summary judgment, Huber's statement that she deeded the property to Thomas to secure a $26,-000.00 debt must be taken as true. Common sense also supports the statement. Thus, as to the security interest claimed by the trustee under Thomas's deed, the language of section 541(d) exempts Huber's equitable interest from the reach of the trustee and his strong-arm powers under section 544(a)(3). While some motivation for enactment of the foregoing section has been ascribed to concern for abuse of servicing agreements in secondary mortgage market transactions, the specific language of the statute is so broad that reducing it to a specialized limitation would be to characterize a general principle by only one of its many specific applications.

In the legislative history, it appears that the language of section 541 was intended to be generally applicable:

... As section 541(a)(1) clearly states, the estate is comprised of all legal or equitable interests of the debtor in property as of the commencement of the case. To the extent such an interest is limited in the hands of the debtor, it is equally limited in the hands of the estate except to the extent that defenses which are personal against the debtor are not effective against the estate ...

124 CONG.REC. S17413 (daily ed. Oct. 6, 1978) (remarks of Sen. DeConcini).

This view reflects case law prior to the enactment of the present Bankruptcy Code. Those cases generally held that pursuant to section 70 of the Bankruptcy Act, the pre-Code analogue to section the trustee took the property with its burdens. There is a discussion of this issue and cases supporting the foregoing conclusion in *In re Quality Holstein Leasing*, 752 F.2d 1009 (5th Cir.1985). That case held that a party who was not the immediate victim of fraudulent debtor could not claim a constructive trust. At page 1015, the court stated: "[o]ne who claims an interest in estate property through the beneficiary of a constructive trust, in other words, may not thus avoid the trustee's strong-arm powers." The court engaged in considerable discussion as to the interplay of sections 541 and 544, stating:

We agree with Borg–Warner that section 544 does not entitle a trustee to retain for the benefit of the estate all property regardless of the means—fair or foul—by which the debtor obtained it. . . .

We start with the proposition that imposition of a constructive trust under state law upon a bankruptcy debtor's property generally confers on the true owner of the property an equitable interest in the property superior to the trustee's. As we recently stated in construing section 541(d):

With regard to property held by [a] trustee, "[t]he rule is elementary that the estate succeeds only to the title and rights in the property that the debtor possessed, although the trustee is armed, of course, with the special rights and powers conferred upon him by the Code itself. Therefore ..., the estate will generally hold such property subject to the outstanding interest of the beneficiaries."

*Georgia Pacific Corp. v. Sigma Service Corp.*, 712 F.2d 962, 968 (5th Cir.1983). (citation omitted)

*Quality Holstein Leasing*, 752 F.2d at 1012.

The court further stated:

As a general rule, it must be held that section 541(d) prevails over the trustee's strong-arm powers. Although those powers allow a trustee to assert rights that the debtor itself could not claim to property, Congress did not mean to authorize a bankruptcy estate to benefit from property that the debtor did not own. Where state law impresses property that a debtor holds with a constructive trust in favor of another, and the trust attaches prior to the petiti the trust beneficiary normall; over its equitable interest in the property through bankruptcy court proceedings.

*Id.* at 1013–1014.

The court in *In re N.S. Garrott & Sons*, 772 F.2d 462, 467 (8th Cir.1985) followed *In*

re Quality Holstein Leasing. In N.S. Garrott, an escrow fund that was technically property of the Chapter 11 debtor's estate was held to be subject to a constructive trust in favor of an intended beneficiary of the fund. The court, citing section 541(d), concluded:

> So, while we agree with the district court that the entire fund is technically property of the estate, we cannot agree that the debtors' interests in the main fund are unlimited. Since the estate cannot acquire greater interests than those which the debtors had, we conclude that the estate holds the main fund, ... subject to the equitable interests of others. As such the bankruptcy court is bound to recognize those equitable interests.

Id.

Under state law, Huber would be entitled to a hearing on her contention that the deed, while absolute on its face, was in fact a deed of trust and that she had a considerable equitable interest in the property. See Beeler v. American Trust Company, 140 P.2d 814, modified on other grounds, 24 Cal.2d 1, 147 P.2d 583 (1944); General Casualty Company v. Soda, 184 Cal. App.2d 390, 393, 7 Cal.Rptr. 536, 539 (1960); Glasgow v. Andrews, 129 Cal.App.2d 660, 664, 277 P.2d 400, 403 (1954). It should be noted in this connection that the house sold for approximately $900,000 and that the liens, charges against it, and expenses of sale resulted in a net of some $250,000. The most that Thomas ever advanced[2] was $26,000 or ten percent of the net proceeds. Thus Huber was euchred out of all she had, and according to the record, rendered destitute with her mother on welfare.

There is a considerable body of law which differs from the cases represented by Holstein. A recent case expressing an opposing view is Belisle v. Plunkett, 877 F.2d 512 (7th Cir.1989). That case discusses in some detail the differences in concept and concludes that "The estate gets what the debtor could convey under local law rather than only what the debtor owned under local law—a critical distinction that the Fifth Circuit did not mention [in Hol-

stein]." Belisle, 877 F.2d at 516. This distinction, assuming its validity, does not apply in the instant case because the debtor had conveyed the property to Gunderson prior to bankruptcy. By the time the trustee reopened the estate and placed himself in Gunderson's shoes, he was bound by notice of Ms. Huber's ownership of the property. In any event, as will be discussed below, there was constructive notice of her interest at all relevant times.

The majority has cited two cases which it reads to be as consistent with Belisle: In re Tleel, 876 F.2d 769 (9th Cir.1989), and In re Seaway Express Corp., 912 F.2d 1125 (9th Cir.1990). In Tleel, the equitable interest claimed by the creditor was a partnership interest. While holding that section 544(a)(3), on the facts before it, would override the reservation in favor of the equitable interest set forth in section 541, there is language which does not foreclose giving the equitable interest a right of way over section 544(a)(3) in an appropriate situation. The court stated:

> Chbat's contention that under section 541(d) all beneficial or equitable owners of property may exempt their property from the debtor's estate in all circumstances, notwithstanding the debtor's legal title and the avoidance powers of section 544, goes too far. This interpretation would open the door to allegations of secret deals resulting in constructive trusts and thereby shelter some unsecured claims from avoidance. This result was not intended by the Bankruptcy Code and is contrary to the policy goal of ratable distribution among creditors.

Tleel, 876 F.2d at 773 (emphasis supplied).

As previously pointed out, under California law, the debtor would be permitted to show that there was, in effect, an actual trust with the debtor holding only bare legal title.

The "ratable distribution" case was In re North American Coin & Currency, Ltd., 767 F.2d 1573 (9th Cir.1985). In that case, the court rejected a claim of equitable interest in deposits for coins because of the

2. The record indicates that it may be substantially less.

similar nature of the trust claimant and the bulk of the debtor's creditors. Obviously, in this case, Huber's claim is unique.

In *Seaway, supra,* the equitable claimant was a bank that was attempting to trace the proceeds of accounts receivable (in which the bank had a secured interest) that had gone to purchase real estate. The court pointed out that subsequent bona fide purchasers would have no actual or constructive notice of the equitable claim of constructive trust with respect to the subsequently acquired real estate; that the Uniform Commercial Code and the collateral subject to its provisions does not extend to real property; and under Washington State law, that a bona fide purchaser of real property who buys without notice cuts off any potential constructive trust. The court discussed cases on both sides of the issue, including *Holstein,* which it characterized as a minority view, and *Belisle,* which it characterized as representing the majority rule, and which it chose to follow in *Seaway.*

However, as in *Tleel,* the court in *Seaway* referred to the standard of "ratable distribution" as articulated in the *North American Coin* case. Here, the notion of ratable distribution which implies some similarity of condition between Huber and Thomas's remaining creditors (including Gunderson) is inapposite. In any event, it is apparent that cases in this area vary considerably based on individual facts and equities.

### CONSTRUCTIVE NOTICE

A. The presence of the Huber family on the premises.

It is admitted that the two teenage daughters lived on the premises and that they kept their rooms locked a substantial amount of the time. Huber's mother was in a separate dwelling house and she kept her premises locked most of the time. She had her own key. Thomas had no key to these premises. On these facts, any bona fide purchaser would want to examine the entire premises and would be bound to find the doors locked, and to learn that Thomas had no key. In addition, Huber herself was on the premises. A bona fide purchaser viewing all these circumstances, looking at the three generations living independently on the premises and exercising a good deal of dominion over where each of them lived, would have some concern as to the nature of Thomas's ostensible ownership. Such a buyer would be on inquiry notice. The Huber family was available for such inquiry. The mother and the daughters would have stated, consistent with Huber's declaration, that Thomas did not own the property. A bona fide purchaser of property of substantial value would, in the ordinary course, check the record title, and having done so under all the foregoing circumstances, should have concluded that the unrecorded deed in Thomas's hands was subject to question. This issue was considered in *In re Probasco,* 839 F.2d 1352 (9th Cir.1988), in which the court stated:

> Actual or constructive notice of a prior unrecorded transfer removes a subsequent purchaser from the protection of the recording acts. Clear and open possession of real property constitutes constructive notice of the rights of the party in possession to subsequent purchasers. Such a prospective purchaser must inquire into the possessor's claimed interests, whether equitable or legal (citations omitted). Therefore, a bona fide purchaser who records does not take priority over one in clear and open possession of real property....
>
> [Section 544(a)(3)] does not, however, make irrelevant notice constructively given by open possession any more than it would make irrelevant the constructive notice given by recorded instruments that might evidence a competing claim of title to the real property in question.

*Id.* at 1354–1355.

As indicated, the mother was in clear and open possession of a distinct and separate part of the property, a fact which called for inquiry. Had the record been checked by a bona fide purchaser, it would have shown that the deed that was being displayed by Thomas was not recorded and that the record title was held by Huber. Notice of such circumstance would have been bind-

·ing, as in *In re Gurs*, 27 B.R. 163 (9th Cir. BAP 1983). In that case, the court held that a trustee could not prevail under section 544(a)(3) because he was bound by a notice of *lis pendens*.

With all these red flags evident, a bona fide purchaser from Thomas would have been bound to inquire as to the combination of apparent anomalies, that is, lack of record title, the absence of a legal relationship between debtor and the Hubers, and lack of exclusive possession. On these facts, inquiry was in order. Had it been made, the purchaser would have learned from Huber or her mother or daughters that the true owner of the property, as shown by the record, was Huber.

B. The trustee, by virtue of the bankruptcy proceedings, had actual and constructive notice.

As discussed earlier, the trustee was a stranger to the title as to the subject property until December 1989 when the Gunderson deeds were invalidated.[3] The deed from Thomas to Gunderson was not void. It was voidable and, until the avoidance, Gunderson held the title. That is why Huber began by filing an action against Gunderson and Thomas in state court. The bankruptcy was filed over a year prior to the voiding of the Gunderson lien. Under these circumstances, the case of *In re Professional Inv. Properties of America*, 955 F.2d 623 (9th Cir.1992) is applicable. In that case, the debtor borrowed $50,000 from Briggs and gave him a note and a deed of trust that was not recorded. Briggs, learning that the debtor was in financial difficulty, filed an involuntary bankruptcy petition against him on May 28, 1986. He also filed a motion for the appointment of a trustee. Briggs unsuccessfully attempted to impose an equitable lien on the proceeds of an anticipated sale of the property, which was denied.

There was a question as to whether the trustee had constructive notice of Briggs's unrecorded mortgage. Briggs presented expert testimony that the contents of the petition constituted constructive notice of the Briggs' interest in the real property. The court reviewed the terms of section 544(a)(3) and discussed cases under that statute addressing the rights of a bona fide purchaser for a value in the state of Washington. The court stated that this case turned on whether the bankruptcy petition itself put the trustee on sufficient inquiry or constructive notice of Briggs's prior security interest. *Id.* at 627. The court found that a diligent title search would have disclosed the bankruptcy filing. The court pointed out that the involuntary petition revealed that the holder of the note and deed was specifically mentioned in the involuntary bankruptcy petition and that the security interest, in the form of deeds of trust, was also referenced. *Id.* at 629. The court reasoned that because the involuntary petition set forth that the parties who initiated the bankruptcy proceedings held a deed of trust, there was at least inquiry notice; in other words, the petition which brought about the trustee's existence gave him notice of the lien claim. *Id.* In the present case, the trustee in the reopened case had no interest in the property until the Gunderson lien was avoided. The acquisition of that interest was attended by the knowledge of Huber's outstanding claim to the property.

CONCLUSION

Huber's brief encounter with Thomas was disastrous for herself and her family. The record shows, if her statements are taken as true, that she was deceived and defrauded for the benefit of Thomas and Gunderson and that no creditor of Thomas other than Gunderson was involved with or could have relied on his brief pre-bankruptcy claim of interest in the Club Drive property. The notion of ratable distribution, under these circumstances, is inapplicable. Even if section 544(a)(3) may, as a general principle, override section 541(d), under the circumstances of this case, there was sufficient constructive notice presented to any bona fide purchaser by virtue of the pres-

3. The original deed to Thomas was dated August 1, 1988. He first deeded to Gunderson on August 10, 1988. Bankruptcy was originally filed on November 21, 1988.

ence of the Huber family on the premises and the condition of record title. At the very least, summary judgment depriving them of a factual exploration of this issue was not warranted. In any event, the record which gave the trustee standing to pursue an interest in the property provided him with notice, under any standard, of Huber's basic claim of interest in the property.

I, therefore, respectfully DISSENT.