[No. A053360. First Dist., Div. Three. June 30, 1992.]

LOUIS ADLER et al., Plaintiffs and Appellants, v.
MANOR HEALTHCARE CORP., Defendant and Respondent.

**[Opinion certified for partial publication.\*]**

*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of part V.

COUNSEL

Berry & Berry, Phillip S. Berry, Evans, Latham, Harris & Campisi, and Dominic J. Campisi for Plaintiffs and Appellants.

Miller, Starr & Regalia, Edmund L. Regalia and William R. Plapinger for Defendant and Respondent.

OPINION

CHIN, J.—Appellants are residents and property owners of Rossmoor in Walnut Creek.[1] On appeal from a summary judgment in favor of Manor Healthcare Corp. (Manor), appellants contend that Probate Code section 18100 does not apply to receipt of an easement across private Rossmoor roads in violation of a trust in which they are the beneficiaries.[2] We disagree and affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Rossmoor is a privately owned and operated retirement community in Walnut Creek. Appellants allege that they are shareholders in the Golden Rain Foundation of Walnut Creek (Golden Rain) and beneficiaries under a trust Golden Rain administers. As trustee, Golden Rain holds title to and maintains all commonly owned properties for the benefit of Rossmoor residents and its shareholders.

In September 1987, UDC-Universal Development L.P. (UDC), the Rossmoor developer, agreed to sell Manor an unimproved parcel of land (Lot 4) in Rossmoor. Because Rossmoor property surrounded Lot 4, Manor needed an easement of access through the Rossmoor security gate and across private Rossmoor roads. Manor asked that UDC obtain such an easement. Manor and UDC opened an escrow with First American Title Guaranty Company (First American).

In October 1987, Manor and UDC signed a contract to sell Lot 4 for $2,835,000. First American prepared and recorded a grant deed that conveyed an access easement from Golden Rain to UDC. A grant deed conveying Lot 4 from UDC to Manor incorporates the easement. In a letter to First American with supporting documents, Golden Rain confirmed its authority

---

[1]Appellants are Louis Adler, Tilden Edwards, George Emanuels, Irv Isaacson, Max Newmark, Henry Rosenthal, Eloise Rosser, Ervin Suess, and Electra Venetsanos.

[2]All further statutory references are to the Probate Code unless otherwise indicated.

to transfer the easement. On November 16, 1987, escrow closed, and First American recorded UDC's grant deed of Lot 4 and the access easement to Manor.

Appellants sued Golden Rain, UDC, Manor, and First American, alleging that Golden Rain's transfer of the easement to UDC violated the trust because it was not approved in writing by the Federal Housing Commissioner, the Federal Housing Authority or any successor federal agency, the mortgagee, or the Rossmoor residents, shareholders, and trust beneficiaries. The complaint alleged that First American, as title insurer, escrow holder, and agent for Manor, had either actual, constructive, or inquiry notice of Golden Rain's failure to obtain federal governmental approval of the easement; and that First American's actual or constructive knowledge that Golden Rain exceeded its powers as trustee was also imputed to Manor. Appellants asked for a reconveyance of the easement to Golden Rain and a declaratory judgment that the easement was void.

Manor moved for summary judgment, contending that it was a bona fide purchaser without actual knowledge or notice of the alleged breach of trust, and that as a third party doing business with a trustee, it was absolutely entitled under section 18100 to rely upon Golden Rain's representation of the scope of its authority as trustee. Manor submitted supporting declarations of employees, agents, and attorneys for both Manor and First American stating that neither Manor nor First American had any actual knowledge of Golden Rain's alleged breach of trust. After the motion was heard and argued, the trial court ruled that Manor had no actual knowledge of the purported breaches of trust and was a protected bona fide purchaser of the easement under section 18100. This appeal followed.

## II. THIRD PARTY TRANSACTIONS UNDER SECTION 18100

This case turns on the applicability of section 18100,[3] which states: "With respect to a third person dealing with a trustee or assisting a trustee in the conduct of a transaction, if the third person acts in good faith and for a valuable consideration and without actual knowledge that the trustee is exceeding the trustee's powers or improperly exercising them: [¶] (a) The third person is not bound to inquire whether the trustee has power to act or is properly exercising a power and may assume without inquiry the existence of a trust power and its proper exercise. [¶] (b) The third person is fully protected in dealing with or assisting the trustee just as if the trustee has and is properly exercising the power the trustee purports to exercise."

---

[3]Section 18100 was originally enacted in 1986 (Stats. 1986, ch. 820, § 40, p. 2797) and then reenacted unchanged in 1990 as part of the general revision of the Probate Code (Stats. 1990, ch. 79, § 14).

Section 18100 replaces Civil Code former section 2243, which the courts consistently interpreted as creating a duty of inquiry making constructive notice as binding on third party purchasers as actual notice.[4] (*Central Construction Co.* v. *Hartman* (1935) 7 Cal.App.2d 703, 708-710 [47 P.2d 484]; *Huntoon* v. *Southern T. & C. Bank* (1930) 107 Cal.App. 121, 126-127 [290 P. 86]; *People of State of Cal.* v. *Larkin* (N.D.Cal. 1976) 413 F.Supp. 978, 982-983.) The new statute is drawn from section 7 of the Uniform Trustees' Powers Act of 1964. (See Cal. Law Revision Com. com., 54A West's Ann. Prob. Code (1991 ed.) foll. § 18100, p. 241 [Deerings Ann. Prob. Code (1991 ed.) § 18100, p. 515].)

In recommending replacement of Civil Code former section 2243 with section 18100, the Law Revision Commission expressly intended to give greater protection to the rights of a third party purchaser of trust property. The commission's report states: "The proposed law protects a third person who acts in good faith and for a valuable consideration unless the third person has *actual knowledge* that the trustee is improperly exercising powers under the trust. *Constructive knowledge or inquiry notice of the trustee's powers is not sufficient to deprive a good faith transferee of protection.* This rule is generally consistent with changes that have been made in the law concerning negotiable instruments, securities, and bank accounts. [¶] The proposed law also continues the existing provisions that protect third persons who rely on documents relating to real property recorded with the county recorder."[5] (18 Cal. Law Revision Com. Rep., *supra*, at p. 593, italics added, fns. omitted; 11 Witkin, Summary of Cal. Law, Trusts, *supra*, § 267, at p. 1105.)

Thus, section 18100 was specifically adopted to change the prior law, which placed third party purchasers of trust property on constructive or

---

[4] Civil Code former section 2243 provided: "Every one to whom property is transferred in violation of a trust, holds the same as an involuntary trustee under such trust, unless he purchased it in good faith, and for a valuable consideration." (Repealed by Stats. 1986, ch. 820, § 7, p. 2730.)

[5] The Law Revision Commission's Comment describes the law in existence prior to enactment of section 18100 as follows: "Existing law codifies the rule that a bona fide purchaser of trust property takes the property free of the trust, even though the property was transferred in breach of the trust. Rules protecting bona fide purchasers are favored by courts and legislatures because of their commercial expediency. However, the rules may vary depending upon the type of property involved. One commentator has described the general state of the law as follows: 'One who purchases half a million dollars worth of corporate bonds from a trustee need not inquire into his powers to sell and to give a receipt for the price, but one who buys a pig or a rocking chair at a trustee's auction is bound to study the terms of the trust and determine at his peril their correct legal meaning.'

"If the common law rule, as applied to particular types of transactions, has not been changed by statute, the transferee will not be protected where he or she knew or should have known of the breach." (18 Cal. Law Revision Com. Rep. (Dec. 1986) p. 593, fns. omitted; 11 Witkin, Summary of Cal. Law (9th ed. 1990) Trusts, § 267, pp. 1104-1105.)

inquiry notice of possible breaches of trust. The new law gives such purchasers protected bona fide status except where they have *actual knowledge* of a breach. This interpretation of section 18100 is consistent with the plain meaning of its language, as well as the comments of the Law Revision Commission that proposed its enactment and the history of the Uniform Trustees' Powers Act on which it is based. (Fratcher, *Trustees' Powers Legislation* (1962) 37 N.Y.U. L.Rev. 627, 662-663.)

### III. EFFECT OF SECTION 18103

Appellants' principal argument is that section 18100 does not apply where, as here, a trust is recorded in the chain of title for real property and the trustee transfers the property. Instead, appellants urge, the applicable statute is section 18103, which states: "If an express trust relating to real property is not contained or declared in the grant to the trustee, or in an instrument signed by the trustee and recorded in the same office with the grant to the trustee, the grant shall be deemed absolute in favor of a person dealing with the trustee in good faith and for a valuable consideration." We disagree with appellants' analysis.

Section 18103 addresses a situation different from that presented here. To protect the interests of the trust against third parties dealing with the trustee, the statute provides that an express trust relating to real property must either be recorded or otherwise disclosed in any grant of real property to a trustee. Where the existence of the trust and the trustee's status are undisclosed and unrecorded, third parties who acquire real property from trustees or have any dealings with trustees concerning real property are deemed bona fide.

Contrary to appellants' arguments, section 18103 does not eviscerate section 18100 by reinstating the duties of constructive or inquiry notice for third party purchasers of real property from trustees of recorded trusts. The two statutes are independent of each other. Unlike section 18103, section 18100 deals with the effect on third parties of trustees' improper exercise of their powers. Section 18100 is not limited, either expressly or impliedly, to transactions in personal property, to the exclusion of real property. It protects third parties in *all* transactions with trustees where both the existence of the trust and the status of the trustees are known, and the third parties rely in good faith on the trustees' representations of the scope of their authority. Only where third parties have *actual knowledge* that trustees are exceeding or improperly exercising their powers do the third parties lose this protection. There is no conflict, and indeed no overlap, between the two statutes.

Relevant statutory history further rebuts appellants' argument that section 18100 cannot apply to real property transactions because it contains no mention of real property, while section 18103 does. Section 18103 replaces and essentially restates Civil Code former section 869.[6] Civil Code former section 870 declared "absolutely void" any transfer or other act of trustees in contravention of a real property trust that has been disclosed in the instrument creating the estate.[7] This section was not continued in the revised probate law. Together with Civil Code former section 2243, these three separate statutes formerly governed the issue presented here.[8]

In *Firato* v. *Tuttle* (1957) 48 Cal.2d 136, 139-140 [308 P.2d 333], a trustee conveyed real property in violation of a deed of trust that named the trustee and was recorded. The Supreme Court applied Civil Code former section 2243 to validate the conveyance to innocent purchasers, notwithstanding the facts that that statute did not expressly mention real property transactions, and that Civil Code former section 870, which *did* specifically mention real property, presumably would have made the improper transfer absolutely void. (*Firato, supra*, at pp. 139-140.) The court reasoned that this result accorded with the rule protecting bona fide purchasers who acquire their interests "from a trustee under a secret trust [citations]," and cited Civil Code former section 869 as authority for the rule regarding secret trusts. (*Firato, supra*, at p. 139.) Thus, *Firato* applied section 18100's predecessor, Civil Code former section 2243, to real property transactions notwithstanding its failure specifically to mention such transactions.

Moreover, appellants' argument that section 18103 governs both where the trust is disclosed and where it is not disclosed ignores the separate fates of

[6]Civil Code former section 869 provided: "Where an express trust is created in relation to real property, but is not contained or declared in the grant to the trustee, or in an instrument signed by him, and recorded in the same office with the grant to the trustee, such grant must be deemed absolute in favor of purchasers from such trustee without notice, and for a valuable consideration." (Repealed by Stats. 1986, ch. 820, § 5, p. 2729.)

[7]Civil Code former section 870 provided: "Where a trust in relation to real property is expressed in the instrument creating the estate every transfer or other act of the Trustees, in contravention of the trust, is absolutely void." (Repealed by Stats. 1986, ch. 820, § 5, p. 2729.)

[8]Civil Code former section 2243 was "superseded by Probate Code Section 18100 (protection of third person dealing with trustee) . . ." (Cal. Law Revision Com. com., 10A West's Ann. Civ. Code (1992 pocket supp.) p. 7 [Deering's Ann. Civ. Code (1992 pocket supp.) p. 28]); Civil Code former section 869 was "continued in Probate Code Section 18103 (effect on purchaser of omission of trust from grant of real property) without substantive change . . ." (Cal. Law Revision Com. com., 7 West's Ann. Civ. Code (1992 pocket supp.) p. 81); and Civil Code former section 870 "is omitted" from the current trust law (Cal. Law Revision Com. com., 7 West's Ann. Civ. Code (1992 pocket supp.) p. 81). "For provisions relating to the general subject of [Civil Code] former Section 870," the Law Revision Commission Comment cites sections 16420 (remedies for breach of trust) and 18100, but not 18103. (Cal. Law Revision Com. com., 7 West's Ann. Civ. Code (1992 pocket supp.) p. 81.)

Civil Code former sections 869 and 870. As seen, these statutes formerly stated separate rules for two distinct situations. Only Civil Code former section 869, which states the rule for "secret trusts," i.e., those where the deed does not state the trust, was reenacted as section 18103; Civil Code former section 870, which applied to disclosed trusts, was omitted, probably because it was inconsistent with *Firato*, which applied Civil Code former section 2243 to validate an improper conveyance even though the deed set forth the trust and the conveyance would therefore have been void under Civil Code former section 870. Appellants' argument ignores this history and erroneously assumes that section 18103 reenacted *both* Civil Code former sections 869 and 870.

In its repeal notes for Civil Code former section 870, the Law Revision Commission states: "For provisions relating to the general subject of former Section 870, see Prob.Code . . . [§] 18100 (protection of third person dealing with trustee)." This reference to section 18100 in the repeal notes for Civil Code former section 870, which once stated the rule for disclosed trusts, lends further support to the conclusion that section 18103, like its predecessor, Civil Code former section 869, applies only where the recorded deed does *not* mention the trust, and that otherwise, section 18100 applies.[9]

In this case, the Golden Rain trust agreement was recorded in the official records of Contra Costa County in April 1964.[10] ▪ Thus, under section 18103, Golden Rain could not deal with third persons as though the trust property belonged to it without restrictions. On the other hand, under the clear and express provisions of section 18100, third parties dealing with

---

[9]The California Continuing Education of the Bar treatise on real estate law also supports this analysis. It explains: "Probate Code § 18100 appears to change the rules found in several of the former *Civil Code* sections, particularly CC § 870. Section 18100 provides protection for a third person dealing with a trustee by, in effect, giving a third person who acts in good faith for valuable consideration and without actual knowledge that the trustee is exceeding the trustee's powers or improperly exercising them, the status of a bona fide purchaser. The section provides that such third person is not bound to inquire whether the trustee has power to act or is properly exercising a power and may assume without inquiry the existence of a trust power and its proper exercise. Former CC § 870 provided that, when an instrument creates a trust interest in real property, any conveyance in contravention of the trust is absolutely void. Under Prob C § 18100, a good faith purchaser for value without actual notice that the trustee was transferring the property in contravention of the trust would now retain the property. This is apparently true even if the trustee converts the funds paid for the property by the good faith purchaser to his or her own use, because new Prob C § 18101 provides that a third person who acts in good faith is not bound to ensure the proper application of trust property paid or delivered to the trustee." (Sooy, Cal. Real Property Sales Transactions (Cont.Ed.Bar Supp. 1992) § 3.17, p. 72.)

[10]In light of the recordation of the Golden Rain trust agreement, section 18103 by its terms is arguably not applicable to the facts of this case at all. For purposes of this discussion, we assume that it is applicable here.

Golden Rain in good faith and without *actual knowledge* that it was (allegedly) exceeding or improperly exercising its trust powers were not bound to inquire into those powers, and could assume without inquiry that Golden Rain had authority to act as it did.

First American concededly had notice and knowledge of the trust agreement and Golden Rain's status as a trustee in the real property transactions at issue. Because the trial court properly applied section 18100 to the facts of this case, the only question before it on Manor's motion for summary judgment was whether Manor had actual knowledge of any alleged breach of trust. If not, as an innocent purchaser without any knowledge of prior fraud, malfeasance, or breach of trust, it had an absolute right to rely upon Golden Rain's representation as to the scope of its authority and enjoyed statutory protection from appellants' attempt to set aside the conveyance. (§§ 16420, 18100.)

## IV. SUMMARY JUDGMENT

Code of Civil Procedure section 437c, subdivision (c), *requires* the trial judge to grant summary judgment if all the evidence submitted, and "all inferences reasonably deducible from the evidence" and uncontradicted by other inferences or evidence, show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. ■ In our opinion, the record in this case supports the trial court's conclusion that Manor had no actual knowledge of any of Golden Rain's alleged breaches of its trust agreement. Therefore, Manor was not bound to inquire further into the extent or exercise of Golden Rain's powers and could rely absolutely on Golden Rain's express representation of its authority to enter into the transaction at issue.

The evidence supports the fact that neither First American nor Manor had actual knowledge that Golden Rain had failed to perform any of its duties in making the grant deeds of the subject easement. Manor submitted the declarations of several employees of both Manor and its agent, First American, who had been directly involved in the subject transaction. In each case, these individuals affirmed that they had no knowledge whatsoever of any alleged lack of authority on the part of Golden Rain to make the conveyance.

First American was concededly on notice of Golden Rain's recorded trust agreement, including the requirement that Golden Rain obtain federal government approval for any grant or conveyance of an interest in the Rossmoor real property in the trust. However, nothing in the record of title disclosed whether or not Golden Rain had in fact secured governmental approval prior

to conveying the easement. On the other hand, Golden Rain expressly represented to First American that it *had* the authority to transfer the subject easement, and supplied First American with documentary evidence to support this claim. The only possible conclusion from this evidence was that Manor had no actual knowledge of any alleged breach by Golden Rain of its duties as trustee.

Appellants did not offer *any* evidence to contradict this showing that Manor had no actual knowledge. Instead, in opposing the motion for summary judgment appellants relied almost entirely on their legal argument that section 18100 does not apply to real property transactions. The only factual argument they presented was that because of its review of the recorded title documents, including the Golden Rain trust agreement, First American was on constructive or inquiry notice that Golden Rain had failed to obtain the necessary approvals for its conveyance of the easement, and that this constructive notice was imputed to Manor as First American's principal. Section 18100, which enabled both Manor and First American to rely on Golden Rain's representations of its authority and relieved them of any further duty to inquire whether the trustee was properly exercising its powers, defeats the argument.

## V.  CORPORATE KNOWLEDGE*

. . . . . . . . . . . . . . . . . . . . . . . . . .

## VI.  DISPOSITION

The judgment is affirmed.

White, P. J., and Merrill, J., concurred.

A petition for a rehearing was denied July 14, 1992.

---

*See footnote, *ante*, at page 1110.