In re SALE GUARANTY
CORPORATION,
Debtor.

Alfred H. SIEGEL, Trustee, Appellant,

v.

Bernard G. BOSTON and Carol
A. Boston, Appellees.

Alfred H. SIEGEL, Trustee, Appellant,

v.

David Victor WARD, Appellee.

Alfred H. SIEGEL, Trustee, Appellant,

v.

Terry NEWMAN and Judy
Newman, Appellees.

BAP Nos. CC–97–1493–CHB, CC–97–
1494–CHB, CC–97–1616–CHB.
Bankruptcy No. ND95–15414–RR.
Adversary Nos. ND96–1272–RR, ND96–
1271–RR, ND96–1268–RR.

United States Bankruptcy Appellate Panel
of the Ninth Circuit.

Argued and Submitted March 19, 1998.

Decided April 22, 1998.

David R. Weinstein, Weinstein & Eisen, Los Angeles, CA, for Alfred Siegel, Trustee.

Edwin J. Rambuski, San Luis Obispo, CA, for Bernard G. and Carol A. Boston.

Joseph M. Sholder, Michaelson, Susi & Michaelson, Santa Barbara, CA, for David Victor Ward.

Edwin J. Rambuski, San Luis Obispo, CA, for Terry and Judy Newman.

Before CARLSON,[1] HAGAN, and BRANDT, Bankruptcy Judges.

## OPINION

CARLSON, Bankruptcy Judge.

Appellant chapter 7 trustee brought three actions seeking to quiet title to real property and cash proceeds that Debtor received as an "accommodator" of tax-deferred exchanges under section 1031 of the Internal Revenue Code. The bankruptcy court granted summary judgment for defendants in all three actions, holding that Debtor held the property in trust, and that the bankruptcy trustee could not avoid the trust under the strong-arm powers of section 544(a) of the Bankruptcy Code. We affirm in all three appeals.

## BACKGROUND

Sale Guaranty Corporation ("the Debtor") provided advice and services to property owners seeking to effect tax-deferred exchanges under I.R.C. § 1031. The Debtor's principal, Ray Prehm, died in October 1995. The Debtor filed a chapter 7 petition in December 1995. Appellant ("the Trustee") is the Trustee in that chapter 7 case.

Boston, Newman, and Ward (collectively "the Appellees") are property owners who employed the services of the Debtor.[2] Each owned a parcel of appreciated real property that he wished to transfer in a tax-deferred exchange under I.R.C. § 1031.[3] The exchanges became complex, because none of the Appellees acquired a replacement property at the same time he transferred the old property.

Boston and Newman each acquired a replacement property before finding a buyer for the old property. Each attempted to effect a "deferred reverse 1031 exchange." Each transferred his old property to the Debtor at the same time he acquired his replacement property. The Debtor was to hold an unrecorded deed to the old property as an "accommodator" until the Appellee could find a buyer. When the Appellee found a buyer, the Debtor would convey title to the buyer and remit the sale proceeds to the Appellee. The Debtor filed bankruptcy before either the Boston or Newman property was sold. As a result, the Debtor held

---

1. Honorable Thomas E. Carlson, Bankruptcy Judge for the Northern District of California, sitting by designation.

2. In the Boston case and the Newman case, the Appellees are a married couple. For convenience, each couple is henceforth referred to as one person (e.g., Boston).

3. Under I.R.C. § 1031, gain that would otherwise be recognized upon the transfer of the old property is deferred for recognition upon the subsequent sale or exchange of the replacement property. The latent gain is preserved for later recognition through the transfer of the tax basis of the old property to the replacement property. 26 U.S.C. § 1031 (1997).

title to those properties via unrecorded deeds on the petition date.

Ward sold his old property before he acquired a replacement property. Ward attempted to qualify for a "deferred 1031 exchange" by transferring the proceeds from the sale of his old property to the Debtor until he identified and purchased a replacement property. The proceeds were held by the Debtor pursuant to escrow instructions that stated that the Debtor held the funds as an "accommodator," and that the Debtor was to use to proceeds only to purchase a replacement property for Ward. The Debtor filed bankruptcy before Ward acquired a replacement property. As a result, the Debtor held the sale proceeds from the old property on the petition date.

The Trustee brought quiet title actions against the Appellees seeking a determination that the Debtor's bankruptcy estate holds the real property and funds in question free and clear of any ownership interests of Appellees, and that the Appellees have only unsecured claims against the estate for the value of the property they transferred to the Debtor. Specifically, the Trustee alleged that the Appellees intended to transfer full legal and equitable title to the Debtor. The Trustee further alleged that to the extent the Appellees had reserved any equitable interests, those interests are avoidable through the trustee's strong-arm powers under section 544(a) of the Bankruptcy Code. The Appellees each filed motions for summary judgment, contending that the Debtor held their property in trust and that their equitable interests could not be avoided under the trustee's strong-arm powers.

The bankruptcy court granted summary judgment in favor of the Appellees. The bankruptcy court held that the Debtor held the real properties conveyed by Boston and Newman in resulting trusts. The bankruptcy court ruled that the Trustee did not take the real property free of the resulting trusts as a hypothetical bona fide purchaser under section 544(a)(3), because the Trustee had constructive notice of Appellees' equitable interests. The bankruptcy court found that the Debtor held the cash proceeds transferred by Ward in an express trust, and that

the Trustee did not take the funds free of that trust as a hypothetical judgment lien creditor under section 544(a)(1), because the nature of the Debtor's business put any creditor on constructive notice that a bank account in the Debtor's name may be held in trust for other persons. The Trustee timely appealed.

## ISSUES

1. Whether the real properties transferred by Boston and Newman were held by the Debtor in resulting trust.

2. Whether any resulting trust on the Boston and Newman real properties can be avoided by the Debtor's bankruptcy trustee under section 544(a)(3).

3. Whether the cash proceeds from the sale of Ward's real property were held by the Debtor in express trust.

4. Whether any express trust on the Ward sale proceeds can be avoided by the Debtor's bankruptcy trustee under § 544(a)(1).

## STANDARD OF REVIEW

We review *de novo* the bankruptcy court's decision to grant summary judgment. *In re Thomas,* 147 B.R. 526, 528 (9th Cir. BAP 1992), *aff'd,* 32 F.3d 572 (9th Cir.1994), *cert. denied sub nom.,* 513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995). In so doing, we review the evidence in the light most favorable to the nonmoving party, and determine whether there is any genuine issue of material fact and whether the bankruptcy court correctly applied the relevant substantive law. *Id.*

## DISCUSSION

The three actions on appeal turn upon whether the Debtor's bankruptcy estate holds in trust the real property and cash that the Appellees transferred to the Debtor prepetition. Property that a debtor holds in trust for another does not become property of the estate available for distribution to creditors. 11 U.S.C. § 541(d); *In re North American Coin & Currency, Ltd.,* 767 F.2d 1573, 1575 (9th Cir.1985), *cert. denied sub nom.,* 475 U.S. 1083, 106 S.Ct. 1462, 89

L.Ed.2d 719 (1986). Whether the Debtor held the property in trust is governed by state law. *Id.* The parties agree that California law governs all state-law issues. Whether the bankruptcy trustee can avoid any trust to which the Debtor was subject is governed by section 544(a) of the Bankruptcy Code.

**1. Did the Debtor Hold the Real Property in Resulting Trust for Boston and Newman?**

 Whether the Debtor held the real property of Boston and Newman in resulting trust depends upon whether the parties intended the Debtor to receive beneficial ownership of those properties. Under California law,

> "[a] resulting trust arises from a transfer of property under circumstances showing that the transferee was not intended to take the beneficial interest." It has been termed an "intention-enforcing" trust, to distinguish it from the other type of implied trust, the *constructive* or "fraud-rectifying" trust. The resulting trust carries out the inferred intent of the parties; the constructive trust defeats or prevents the wrongful act of one of them.

*American Motorists Ins. Co. v. Cowan,* 127 Cal.App.3d 875, 179 Cal.Rptr. 747, 752 (1982) (citations omitted); *accord* 11 B.E. Witkin, *Summary of California Law,* Trusts § 297 at 1131–32 (9th ed.1990). Where the transferee of property does not pay the purchase price for the property, the transferee is presumed to hold the property in a resulting trust for the party who paid the consideration for its purchase. *See Johnson v. Johnson,* 192 Cal.App.3d 551, 237 Cal.Rptr. 644, 646–47 (1987); *Emden v. Verdi,* 124 Cal. App.2d 555, 269 P.2d 47, 49–50 (1954).

 The documents evidencing the transfers indicate that Boston and Newman were to retain beneficial ownership of the properties. The escrow instructions governing the transfers together with the written explanatory materials that the Debtor provided each client explain the relationship of the parties as follows: (1) the deed transferring the property to the Debtor would not be recorded and would be held in escrow until the property was sold; (2) when the property was sold, all the proceeds would be paid to the transferor (i.e., Boston or Newman); (3) the Debtor would take title to the property as an "accommodator" or "straw man;" and (4) the transferor remained responsible for all expenses of maintaining the property and agreed to indemnify the Debtor for any liabilities the Debtor incurred as a result of holding title as accommodator. Boston and Newman each submitted declarations stating that they continued to exercise control over their properties after transfer to the Debtor: collecting rent, paying expenses, listing the properties for sale, and controlling the sales efforts. The declaration submitted by the Trustee stated only that the Trustee had possession or control of the grant deeds, that the Debtor's records contained no evidence of promissory notes issued to Boston or Newman, and that the Debtor's records indicated that mortgage, utility, and maintenance payments on the properties were made through the Debtor.[4]

On this record, the relevant historical facts are undisputed and establish that Boston and Newman were to retain all important incidents of ownership: possession, the right to receive rents, the duty to pay expenses, the benefits and risk of any change in value, and the right to all proceeds of sale. Moreover, because it is undisputed that Boston and Newman paid the consideration for the properties, and the facts suggest no basis to infer a gift to Debtor, it is presumed that the Debtor held the properties in resulting trust. *See Johnson,* 237 Cal.Rptr. at 646–47; *Emden,* 269 P.2d at 49–50. The Trustee did not rebut that presumption. Thus, the bankruptcy court did not err in determining via summary judgment that the Debtor held the real properties in resulting trust for Boston and Newman.

The Trustee argues that Boston and Newman are merely unsecured creditors of the Debtor, whose only remaining interest in the transferred properties is the contractual

---

4. The declarations submitted by Boston and Newman acknowledge that they paid all property expenses through the Debtor.

right to receive cash when the properties are sold. This argument is unpersuasive, because no purchase price was fixed when the properties were transferred to the Debtor. Rather, the Debtor's obligation was to pay to Boston and Newman the entire proceeds of sale when the property was sold.[5] Under this arrangement, Boston and Newman continued to enjoy both the burdens and benefits of ownership. They bore the risk of destruction or decline in value, and enjoyed the benefits of any increase in value.

The Trustee also argues that the bankruptcy court should have found that Boston and Newman intended to convey full title to the Debtor, because transfer of any lesser interest would not satisfy the requirements for a tax-deferred exchange. We decline the Trustee's invitation to determine the requirements of a tax-deferred exchange and to reform the transaction between the Appellees and the Debtor to conform to those requirements. Our task is to decide whether the bankruptcy court erred in discerning the intent of the parties. Determining the requirements of I.R.C. § 1031 would provide little help in discerning that intent in the present case. This is so because the explanatory materials that the Debtor provided each client represent that a taxpayer can qualify for a reverse § 1031 exchange, even though the Debtor holds legal title to the old property only as a "straw man" and the client retains equitable ownership of that property. Boston and Newman stated in their declarations that they believed these representations. The Trustee did not submit any contrary evidence. Thus, all the evidence indicates that the parties believed Boston and Newman did not have to convey full title to qualify for a tax-deferred exchange. It is the parties' belief about the requirements of I.R.C. § 1031 that is relevant evidence of whether they intended the Debtor to receive unrestricted title to the properties.[6]

## 2. Could the Bankruptcy Trustee Avoid the Resulting Trust under His Powers as a Hypothetical Bona Fide Purchaser under Section 544(a)(3)?

The Trustee contends that even if the Debtor held the deeds from Boston and Newman in resulting trust, a bankruptcy trustee's strong-arm powers permit him to avoid that trust for the benefit of the bankruptcy estate. Under section 544(a)(3) of the Bankruptcy Code, a bankruptcy trustee takes free of any interest in real property that could be avoided by a bona fide purchaser, whether or not such a bona fide purchaser actually exists.[7] The rights of a bona fide purchaser are determined under state law. *In re Weisman*, 5 F.3d 417, 420 (9th Cir. 1993); *In re Van Ness Assocs., Ltd.*, 173 B.R. 661, 670 (Bankr.N.D.Cal.1994). Under governing California law, a purchaser takes subject to a prior interest of which the purchaser has actual or constructive knowledge. *Weisman*, 5 F.3d at 420; *Thomas*, 147 B.R. at 529. The Ninth Circuit has interpreted section 544(a)(3) to render irrelevant only the trustee's actual knowledge. The trustee's constructive knowledge of a prior interest will prevent avoidance of that interest. *Weisman*, 5 F.3d at 420; *In re Probasco*, 839 F.2d 1352, 1354 (9th Cir.1988). Thus, the

---

5. The Debtor was to have issued promissory notes which would be paid off by the transfer of all proceeds from sale, but the Trustee's declaration indicates no such notes were ever executed. In any case, the notes would have required all proceeds of sale to be paid to the Appellees.

6. The Trustee also argues that we should construe the transaction in accord with the requirements of I.R.C. § 1031 to avoid furthering an illegal scheme to avoid taxes. We decline to address this argument in detail. The Trustee failed to raise the issue below, submitted no evidence that the parties intended to evade the law, and cites no authority suggesting that the transaction was otherwise illegal.

7. Section 544(a)(3) provides in relevant part:

(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

. . . .

(3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.

11 U.S.C. § 544(a)(3)(1994).

controlling question is whether the Trustee had constructive knowledge of the equitable interests of Boston and Newman.

■■■■■ Whether the Trustee had such constructive knowledge turns upon whether a "prudent purchaser" would have discovered those interests.[8] A prudent purchaser is someone who is knowledgeable in the management of practical affairs, and who acts with wisdom and circumspection. *Weisman*, 5 F.3d at 420. Specifically, a prudent purchaser is charged with knowledge of: (1) the nature of the property; (2) the current use of the property; (3) the identity of the person in possession of the property; and (4) the relationship between the person in possession and the person whose interest the purchaser intends to acquire. *Id.* Where possession is inconsistent with the interest of the party from whom the purchaser intends to acquire title, the purchaser has a duty to inquire about the rights of the occupant. *Id.* at 421; *In re Exchanged Titles, Inc.*, 159 B.R. 303, 306–07 (Bankr.C.D.Cal.1993) (retained possession by transferor in reverse deferred § 1031 exchange). Possession by a tenant provides constructive notice to the purchaser of the lessor's interest in the property. *J.R. Garrett Co. v. States*, 3 Cal.2d 379, 44 P.2d 538 (1935); *Taber v. Beske*, 182 Cal. 214, 187 P. 746 (1920); *Claremont Terrace Homeowners' Ass'n, v. U.S.*, 146 Cal. App.3d 398, 194 Cal.Rptr. 216, 222 (1983).

■■■■ The bankruptcy court did not err in determining via summary judgment that the Trustee had constructive knowledge that the Debtor held the real properties in resulting trust. Boston and Newman each established that they retained possession and control of the properties after transfer to the Debtor. Boston submitted declarations stating that on the petition date the property was occupied by his tenant, that a property manager hired by Boston collected rent and paid expenses at Boston's direction, and that the tenant and property manager would have notified an inquiring purchaser of Boston's interest in the property. Newman submitted a declaration stating that on the petition date he retained possession of the property and would have notified an inquiring purchaser of his interest in the property. Both Boston and Newman submitted declarations stating that on the petition date the properties were listed for sale through brokers who had placed conspicuous for-sale signs on the property, and that the brokers would have notified inquiring purchasers that Boston and Newman purported to be the sellers. The Trustee failed to submit any declarations or other evidence controverting any aspect of these declarations.[9] On this record, the bankruptcy court correctly determined that there is no genuine issue of fact that Boston and Newman retained sole possession of the properties on the petition date. Because that possession was inconsistent with the Debtor's ownership of the properties, the Trustee had constructive knowledge of the interests of Boston and Newman, and Boston and Newman are entitled to judgment, as a matter of law, that their interests are not avoidable under section 544(a)(3).[10]

---

8. California Civil Code section 19 provides: "Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, has constructive notice of the fact itself in all cases in which, by prosecuting such inquiry, he might have learned such fact." Cal. Civ.Code § 19 (West 1982).

9. The Trustee submitted declarations stating that the Debtor's records indicated that the Debtor paid the mortgage and other expenses on each property after the transfer. That statement is not inconsistent with the declarations of Boston and Newman, who stated that they transferred money to the Debtor, which the Debtor used to pay the expenses.

10. The present case is distinguishable from *In re Thomas*, 147 B.R. 526 (9th Cir. BAP 1992), *aff'd*, 32 F.3d 572 (9th Cir.1994), *cert. denied sub nom.*,

513 U.S. 1079, 115 S.Ct. 727, 130 L.Ed.2d 631 (1995), because Boston and Newman retained exclusive possession of the properties. In *Thomas*, the debtor lived on the property in an extramarital relationship with the woman who claimed an equitable interest adverse to the debtor's ownership. *Thomas* held that the trustee did not have constructive knowledge of the woman's equitable interest, because her presence on the property with the debtor in an apparent "family type of living arrangement ... was entirely consistent with the debtor being the owner of the property." *Id.* at 531. *Thomas* recognized, however, that exclusive possession by a party claiming an adverse interest has long been recognized as providing constructive knowledge of that interest. *Id.* at 530.

The Trustee contends that under California Probate Code sections 18100 and 18103, constructive knowledge of the resulting trust does not prevent him from taking title free of that trust as a bona fide purchaser. Section 18100 provides that a party "dealing with a trustee ... for a valuable consideration and without actual knowledge that the trustee is exceeding the trustee's powers" may assume without making inquiry that the trustee is acting properly. Cal. Prob.Code § 18100 (West 1991). Section 18103 provides:

> If an express trust relating to real property is not contained or declared in the grant to the trustee, or in an instrument signed by the trustee and recorded in the same office with the grant to the trustee, the grant shall be deemed absolute in favor of a person dealing with the trustee in good faith and for a valuable consideration.

Cal. Prob.Code § 18103 (West 1991). The Trustee contends that section 18103 should be read together with section 18100 to provide that a person who purchases real property subject to an unrecorded trust takes free of the trust unless the purchaser has actual knowledge of the trust. The Trustee's argument is unpersuasive.

■■■ The leading case interpreting section 18100 states that it applies only "where both the existence of the trust and the status of the trustees are known," and that the statute was intended to protect parties dealing with the trust against claims that the trustee exceeded his or her powers in acting *on behalf of the trust. Adler v. Manor Healthcare Corp.,* 7 Cal.App.4th 1110, 9 Cal.Rptr.2d 732, 734–35 (1992). *Adler* states that section 18103, not section 18100, governs undisclosed trusts on real property, such as the one at issue here. *Id.,* 9 Cal.Rptr.2d at 735. Section 18103 does not contain the language of section 18100 protecting any transferee without "actual knowledge" of a breach of trust. Rather, section 18103 uses the term "good

faith," which incorporates the common law test of constructive notice. *Id.* at 735.[11]

The Trustee also contends that the bankruptcy court's recognition of a resulting trust conflicts with the Ninth Circuit's decision in *In re North American Coin & Currency, Ltd.,* 767 F.2d 1573 (9th Cir.1985), *cert. denied sub nom.,* 475 U.S. 1083, 106 S.Ct. 1462, 89 L.Ed.2d 719 (1986). That decision upheld the bankruptcy court's refusal to impose a constructive trust on funds held by the debtor. In its decision, the court noted that a constructive trust is merely an inchoate remedy until imposed by a court, and that in that case no court had imposed a constructive trust as of the petition date. *Id.* at 1575. The Ninth Circuit concluded that bankruptcy courts should act cautiously in imposing constructive trusts. The court explained that the postpetition imposition of such a remedy undermines the principle of testing the estate's interests as of the petition date, and the principle of ratable distribution among creditors, under the aegis of a "relatively undefined equitable power." *Id.*

*North American Coin* does not govern this case. The Panel has previously held that the bankruptcy court must consider the bankruptcy policy of ratable distribution only in determining whether to impose a *constructive* trust, not in applying state law governing *resulting* trusts. *In re Markair, Inc.,* 172 B.R. 638, 641–42 (9th Cir. BAP 1994); *In re Golden Triangle Capital, Inc.,* 171 B.R. 79, 82–83 (9th Cir. BAP 1994). Enforcement of a resulting trust differs from postpetition imposition of a constructive trust in two important respects. First, a resulting trust gives effect to the intent of the parties. As such, the circumstances in which it is effective are governed by the usual standards for establishing intent, and not by the "relatively undefined" equitable considerations that govern constructive trusts. Second, because a resulting trust merely gives effect to the original will of the parties, it is effective from

---

11. Sections 18100 and 18103 apply only to express trusts, not to resulting trusts. Cal. Prob. Code §§ 82, 15002, 15003(a)(West 1991). The Trustee does not contend that any trust to which the Boston and Newman properties are subject is an express trust. Section 15002 states that questions concerning trusts not addressed by the Pro-

bate Code (i.e., resulting trusts) are governed by the common law. Under the common law of California, the transferee of real property held in trust takes subject to that trust if the transferee has constructive knowledge of the trust. *See Adler,* 9 Cal.Rptr.2d at 734–35 & n. 5.

the date of the original transfer, and does not undermine ratable distribution among creditors who possess similar legal rights as of the petition date. *Golden Triangle,* 171 B.R. at 83.

### 3. Did the Debtor Hold the Sale Proceeds in an Express Trust for Ward?

■ The bankruptcy court determined that the Debtor held the proceeds of the sale of Ward's property in an express trust. Under California law, there are four requirements for an express trust: (1) trust intent; (2) trust property; (3) trust purpose; and (4) a beneficiary. 11 B.E. Witkin, *Summary of California Law,* Trusts § 27 at 912 (9th ed.1990). On appeal the Trustee challenges only the determination that the parties intended the Debtor to hold the proceeds in trust.

■ The bankruptcy court did not err in determining via summary judgment that the Debtor held the sale proceeds in trust. The Debtor and Ward executed an exchange agreement, providing that: (1) the Debtor would hold the proceeds of the old property while Ward looked for a replacement property; (2) the Debtor would carry the proceeds on its books "as a credit to [Ward] for application to the exchange property to be acquired;" (3) Ward would identify a replacement property within 45 days and complete the purchase of that property within 180 days after transfer of the old property as required by section 1031; (4) if Ward was unable to meet that deadline the Debtor would return the proceeds to Ward; and (5) interest earned on the proceeds would not be the property of Ward. The explanatory brochure Ward received stated that the Debtor would hold the sale proceeds as a "straw man," and that although interest on the proceeds would nominally belong to the Debtor, that interest would be credited against the fees Ward owed the Debtor, and any interest in excess of those fees would be paid to Ward

as a "growth factor." The declaration of Martha Sohacki, the former vice president of the Debtor, states that she deposited the sale proceeds into a separate trust account for Ward at First Interstate Bank in July 1995. The declaration submitted by the Trustee states only that the Trustee withdrew $58,-347 from the First Interstate account in February 1996 to close that account. The Trustee's declaration does not state that the First Interstate account had not been set up as a trust account. On this record, we conclude that the relevant historical facts are undisputed and establish that the parties intended the Debtor to hold the Ward sale proceeds in trust.

The Trustee argues that the bankruptcy court should have found that Ward intended to transfer all interest in the sale proceeds to the Debtor, because transfer of any lesser amount would not satisfy the requirements of a tax-deferred exchange. Once again, we decline to determine the requirements of I.R.C. § 1031, because the Debtor represented that transfer to a "straw man" would satisfy section 1031, Ward stated that he believed the Debtor's representation, and it is only the parties' intent that is relevant.

### 4. Could the Trustee Avoid the Trust on the Ward Sale Proceeds as a Hypothetical Judgment Lien Creditor under Section 544(a)(1)?

Section 544(a)(1) of the Bankruptcy Code enables a trustee to avoid any transfer made or obligation incurred by the debtor that could be avoided by a creditor who on the petition date obtained a judgment lien against all property of the estate, whether or not such a creditor exists.[12] The bankruptcy court held that section 544(a)(1) did not enable the Trustee to avoid the trust on the Ward sale proceeds because the Trustee had constructive knowledge of that trust. We agree with the result reached, but for rea-

**12.** Section 544(a)(1) of the Bankruptcy Code provides:

(a) The trustee shall have ... the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—
(1) a creditor that extends credit to the debtor at the time of the commencement of the

case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists.
11 U.S.C. § 544(a)(1)(1994).

sons different from those stated by the bankruptcy court.

■■■■ As a judgment lien creditor, the Trustee simply cannot reach property held by the Debtor in trust for another. Although the Bankruptcy Code provides the Trustee the status of a judgment lien creditor, the powers the Trustee wields in that role are defined by California law. *In re Martin,* 6 B.R. 827, 831 (Bankr.C.D.Cal.1980). An unbroken line of California cases holds that a judgment lien creditor cannot reach property that the judgment debtor holds in trust for another. *Murphy v. Clayton,* 113 Cal. 153, 45 P. 267, 268 (1896); *Richion v. Mahoney,* 62 Cal.App.3d 604, 133 Cal.Rptr. 262, 264 (1976); *Miller v. Miller,* 55 Cal.App.2d 199, 130 P.2d 438, 442 (1942); *Nishi v. Downing,* 21 Cal.App.2d 1, 67 P.2d 1057, 1058 (1937). Unlike a bona fide purchaser of real property, a judgment lien creditor cannot acquire property held in trust by the judgment debtor. *Murphy,* 45 P. at 268. Because constructive notice is irrelevant in determining the rights of the Trustee as a judgment lien creditor, we need not determine whether the bankruptcy court correctly determined that the Trustee had constructive notice of the Ward trust.

■■■ The Trustee argues that he holds the Ward sale proceeds free of any trust under California Prob.Code section 18100. That section provides that a party "dealing with a trustee ... for a valuable consideration and without actual knowledge that the trustee is exceeding the trustee's powers" may retain property transferred by the trustee in violation of the trust. Cal. Prob.Code § 18100 (West 1991). The Trustee's argument is unpersuasive for two reasons. First, under California law, a judgment lien creditor is not a purchaser for value. *In re Mellor,* 734 F.2d 1396, 1401 n. 4 (9th Cir. 1984) ("a judgment lien creditor is not a bona fide purchaser, and therefore is subject to all prior interests in the property, whether known or unknown, recorded or unrecorded"); *20th Century Plumbing Co., Inc. v. Sfregola,* 126 Cal.App.3d 851, 179 Cal.Rptr. 144, 146 (1981). Second, section 18100 is intended to protect parties who purchase property from the trust for consideration

paid *to the trust.* See *Adler,* 9 Cal.Rptr.2d at 735–37. The statute contains no suggestion that the legislature intended to repeal the long-standing rule of California law that a personal creditor of the trustee cannot reach trust property.

Finally, the Trustee argues once again that enforcement of a trust on the Ward sale proceeds is inconsistent with the decision of the Ninth Circuit in *North American Coin.* We do not agree. For the reasons we noted in Part 3, we believe that decision applies only to constructive trusts, and not to resulting or express trusts.

## CONCLUSION

These cases turn on state law more than the Trustee would like to admit. Whether the Debtor held the property of the Appellees in trust is a question governed by California law. Upon the uncontroverted evidence submitted by the Appellees, the bankruptcy court properly determined under California law that the Debtor held the property in trust. Similarly, the effect of the Trustee's status as a bona fide purchaser and judgment lien creditor is defined by California law. The Trustee may not avoid the trust on the Boston and Newman real property through his powers as a bona fide purchaser, because it is undisputed that Boston and Newman retained possession, and under California law that continued possession provided the Trustee constructive notice of their unrecorded interests. The Trustee may not avoid the trust on the Ward sale proceeds through his powers as a judgment lien creditor, because California law does not allow such a creditor to reach property held by the judgment debtor in trust for another.

We AFFIRM the judgment of the bankruptcy court in each of the three appeals.