**In re CARMEL OF ST. JOSEPH OF SANTA YNEZ, Debtor.**

**Joseph H. Kirby, as Trustee of The Kirby Family Trust, The Laura V. Kirby Trust, The Patrick F. Kirby Trust, and The Helen Oberle Trust, Appellant,**

v.

**F. Wayne Elggren, Chapter 7 Trustee, Appellee.**

**BAP No. CC–98–1801–MeBWe.**
**Bankruptcy No. ND–97–13322–RR.**
**Adversary No. ND–98–01063–RR.**

United States Bankruptcy Appellate Panel of the Ninth Circuit.

Argued and Submitted May 19, 1999.

Decided July 30, 1999.

John J. Flynn, Nossaman, Gunther, Knoz & Elliot, Irvine, CA, for Joseph H. Kirby, as Trustee of the Kirby Family Trust, the Laura V. Kirby Trust, the Patrick F. Kirby Trust, and the Helen Oberle Trust, appellant.

Michael S. Kogan, Arter & Hadden, Los Angeles, CA, for F. Wayne Elggren, Chapter 7 Trustee, appellee.

Before MEYERS, BRANDT and WEISSBRODT [1], Bankruptcy Judges.

## OPINION

MEYERS, Bankruptcy Judge.

### I

An entity brought an action to impose a constructive trust, or in the alternative a resulting trust, on a parcel of real property that the Chapter 7 trustee asserted was estate property. The court granted the trustee's motion for summary judgment.

We **AFFIRM.**

---

1. Hon. Arthur S. Weissbrodt, Bankruptcy Judge for the Northern District of California, sitting by designation.

## II

## FACTS

Sister Jean Marie Kirby ("Sister Jean Marie") is a member of the Roman Catholic religious order of nuns known as the Discalced Nuns of the Order of Our Blessed Lady of Mount Carmel ("Carmelites"). She was one of the founding sisters of the Carmel of St. Joseph of Long Beach, which was established in 1949. This Carmel subsequently became the Carmel of St. Joseph of Santa Ynez ("Debtor"). Sister Jean Marie was involved with the governance of the Debtor, at least to a sufficient degree that she had knowledge of many of the relevant financial dealings of the Debtor.

Her brother, Joseph Kirby ("Kirby"), is the trustee of several family trusts, including the Kirby Family Trust ("Kirby Family Trust"). Kirby wished to arrange a gift to the Debtor that would allow the Debtor to purchase real property on which a new monastery could be built. Stock in a family owned business, held by the trusts, was liquidated to raise the funds. In 1986, Kirby directed the transfer of the funds to the Debtor.

In 1988, the Debtor purchased two parcels of real property, using the funds from the Kirby Family Trust. The parcels are generally referred to as Parcels A and B ("Property"). The Debtor commenced construction of a new monastery sometime thereafter. The cost of construction was not paid with any of the funds from Kirby.

On June 27, 1997, the Debtor filed for relief under Chapter 7 of the Bankruptcy Code. F. Wayne Elggren was appointed Chapter 7 trustee ("Trustee").

On March 20, 1998, Kirby, in his representative capacity as trustee of the Kirby Family Trust, filed a complaint for the imposition of a constructive trust on the Property, and return of the Property to the Kirby Family Trust. Kirby alleged that the Kirby Family Trust donated the Property in 1988 for the designated purpose of providing a location for a new monastery for the members of the Carmel of St. Joseph. He asserted that the condition had not been satisfied and the Property had to be returned.

On April 20, 1998, Kirby, again as trustee of the Kirby Family Trust, and now also as trustee of the Laura V. Kirby Trust, the Patrick F. Kirby Trust and the Helen Oberle Trust, filed a first amended complaint seeking both imposition of a constructive trust and the declaration of a resulting trust. The factual allegations remained the same.

The Trustee filed a motion for summary judgment on April 22, 1998. The court conducted a hearing on the motion on June 16, 1998, and dismissed the complaint with leave to amend on the ground that title to the Property was not presently in the name of the estate. Instead, it had been transferred prior to the bankruptcy filing to the Discalced Carmelites of St. Louis, Mo., Inc. ("Carmel of St. Louis"), but the Trustee represented that he was near a settlement on a fraudulent transfer action, and expected to have title to the Property transferred to the estate in short order. The settlement with the Carmel of St. Louis was approved by the court and title to the Property was transferred to the Debtor.

Kirby filed a second amended complaint ("Second Amended Complaint") on June 30, 1998, naming the Debtor, the Trustee and the Carmel of St. Louis as defendants. Kirby now admitted that the Kirby Family Trust had transferred *money,* and *not the Property,* to the Debtor in 1986, "for the specific purpose of providing for the purchase of real property to serve as the location for a new monastery for the Carmel."

In support of this allegation, he attached a letter he wrote to the Bishop of Los Angeles dated December 27, 1986, in which he stated that "[i]n February 1986, as trustee to said will, I gave the Carmel of St. Joseph the consent to use *the money* in the trust for the specific purpose of

purchasing property at Orange in which they were interested." (emphasis added). He maintained that under the Canon Law for the Roman Catholic Church, there was an implied promise that the Property had to be returned if not used for the designated purpose. He also claimed that beginning in October or November of 1997, proceedings were commenced to dissolve the Carmel of St. Joseph, which render impossible the intended use of the Property.

The Trustee filed a second motion for summary judgment ("Motion") on July 30, 1998. Kirby opposed the Motion on the grounds it was not supported by any evidence and it was contrary to existing law. The court entered its order granting the Motion on November 3, 1998.

## III

## STANDARD OF REVIEW

The Panel reviews the granting of summary judgment *de novo. In re Yarbrow,* 150 B.R. 233, 236 (9th Cir. BAP 1993).

## IV

## DISCUSSION

On its face, this appears to be a complicated case involving difficult legal issues. However, a closer examination reveals that the case turns on two very basic facts. One, Kirby gave *money* to the Debtor for the purchase of some unidentified parcel of real property. He did not gift over the Property itself, although he so alleged in his original complaint. In the Second Amended Complaint, he corrected this and admitted that he transferred money to the Debtor. And in his declaration in opposition to the Motion, Kirby stated that he "authorized the release of the *proceeds* of

the sale [of stock] to the [Debtor]" and that "[a]t all times, it was [his] intention, consistent with the intentions of my parents, to provide this *money* to the Carmel for the designated purpose of providing a new place for residence of the Carmel of St. Joseph...."

Two, Kirby is seeking to have a constructive or resulting trust imposed on the *Property* as his relief. He is not asking for the imposition of an equitable lien on the Property or on future proceeds when the Property is inevitably sold. He is not seeking a return of the gift that he made. At oral argument, counsel for Kirby made it abundantly clear that by this action Kirby is not seeking monetary damages. Kirby wants the Property. In other words, Kirby is attempting to take title to an asset the Trustee asserts is potentially worth several million dollars, the liquidation of which may pay all creditors in full, as compensation for the gift of $841,035.28.

These facts are undisputed.[2] Once the case is summed up in this fashion it becomes obvious that the equitable relief Kirby seeks is unavailable to him and would actually bring about an inequitable result relative to the other creditors of the estate.

Kirby asserted that either a constructive trust or a resulting trust should be imposed. As to the constructive trust, Kirby relies primarily on *Martin v. Kehl,* 145 Cal.App.3d 228, 238, 241, 193 Cal.Rptr. 312 (1983). This reliance is misplaced. In that case the plaintiff and defendant each paid half of the down payment to purchase a residence. The court found that the parties agreed that the defendant would live in the residence, but if she moved out the parties would share in the proceeds of any sale.

---

**2.** Kirby contends that the Trustee failed to provide any evidence in support of the Motion. He also maintains that there was no discovery conducted. The record belies this assertion. The Trustee filed with his Motion the deposition testimony of Kirby, as conducted on April 16, 1998, as well as the deposition testimony of Sister Jean Marie, as conducted July 20, 1998. In addition to this evidence, both Kirby and Sister Jean Marie submitted declarations in opposition to the Motion. The record contains sufficient evidence to support the Motion.

Furthermore, the court found that the parties agreed title would be recorded in the name of the defendant, though the understanding was that title was shared. This was done in order to secure a more favorable loan. The defendant moved out of the property and rented it out. But she failed to share the rental profits with the plaintiff. He sued and the court imposed a constructive trust.

■ The appellate court affirmed. It stated that a constructive trust was warranted because otherwise the defendant would profit from her failure to recognize the plaintiff's interest. [H]ere, there was far more than a mere enforceable promise that was broken. While title was taken in defendant's name, the property was bought with plaintiff's money. " 'The essence of the constructive trust theory is to prevent unjust enrichment and to prevent a person from taking advantage of his own wrongdoing.' " *Martin v. Kehl,* 145 Cal. App.3d at 237, 193 Cal.Rptr. 312 (citations omitted).

Kirby contends that there was an implied promise, based on Canon law, that the Debtor would return the Property if it could not be used for the intended purpose. He contends that the Debtor's failure to return the Property when it became apparent the monastery would not be built was a breach of that implied promise and amounts to a wrongful act that justifies the imposition of a constructive trust.

■ *Martin* is clearly distinguishable. In that case, there was an agreement to share ownership of the property in question. There is nothing in the record before us that suggests that the Debtor and Kirby intended for Kirby to have an ownership interest in the Property. At best, there may have been an implied agreement that Kirby's gift would be returned upon the dissolution of the Debtor.[3] That

gift was money, and not the Property. The undisputed facts do not support the imposition of a constructive trust.

■ Likewise, Kirby's claim for a resulting trust must fail. Whereas a constructive trust is imposed as a remedy for a wrongful act, a resulting trust is imposed as an "intention-enforcing trust." *In re Sale Guar. Corp.,* 220 B.R. 660, 664 (9th Cir. BAP 1998). It arises from a transfer of property under circumstances demonstrating that the transferee was not intended to take a beneficial interest in the property. *Id.*

■ Kirby argues that a resulting trust exists because the intent of the parties was that the Property would be returned if not used for its intended purpose. There is no support at all for the proposition that the parties intended to have the Property deeded over to Kirby if a new monastery was not built on it. Again, at the most, Kirby might be able to assert that the parties' intent was that the gift of money would be returned if it was not used to buy some property on which a new monastery would be built. Indeed, Kirby wrote to the Bishop in 1986 that "[i]f there is no intention of purchasing the parcel, or another they might prefer, in Orange I will have to reevaluate whether to *return the money* to the trust for reinvestment." (emphasis added).

Kirby argues that when a transfer of property is made to one person, and the purchase price is paid by or for another, a trust is presumed to result in favor of the person by or for whom the purchase price is paid. *See, e.g., Sale Guar. Corp.,* 220 B.R. at 664 ("Where the transferee of property does not pay the purchase price for the property, the transferee is presumed to hold the property in a resulting

---

**3.** We are not saying that there was an implied agreement based on Canon law. Furthermore, we are not saying that Canon law would ever be controlling law. Rather, we are merely examining the best case scenario for Kirby if the parties' intent was that the gift would be returned if not used for its designated purpose, a result consistent with Canon law as Kirby has explained it.

trust for the party who paid the consideration for its purchase.").

This is a correct legal proposition, but it has no application here. First, the funds used to purchase the Property were controlled by the Debtor prior to the purchase, even if Kirby claimed an interest in those funds. Second, the resulting trust is imposed in those cases because the parties intended that the claimant would own the property.

For example, in *Matter of Torrez*, 63 B.R. 751, 754–55 (9th Cir. BAP 1986), the claimants purchased real property with their own funds and with the intent to own it, but they put the title in the name of their adult children in order to have the property qualify for a federal water program. The children filed for bankruptcy and brought an action to quiet title so they could sell the property. The Panel held that the imposition of a resulting trust was appropriate since title was only put in the children's names to avoid certain restrictions in the government program. In other words, the parties never intended for the children to actually own the property.

The imposition of the trust enforces that intent of the parties. Again, there is no evidence that Kirby was to have an ownership interest in the Property. If he had an interest in anything, it was in the money used to buy the Property and not the Property.

## V

## CONCLUSION

Kirby transferred money to the Debtor as a gift. The gift was used as intended—to purchase a parcel of real property. Kirby's interest, if any, was only in the money. He did not obtain a beneficial interest in the Property. Kirby has not presented any evidence to support the proposition that the Debtor agreed to give Kirby the Property if the Debtor failed to build a new monastery on it. Kirby has no right to the Property and there is no basis for the imposition of a constructive trust or a resulting trust for a new monastery.

 Furthermore, the imposition of a constructive trust or a resulting trust would be inequitable. The Trustee stated, and counsel for Kirby did not disagree, that the value of the Property far exceeds the amount of Kirby's claim and that the liquidation of the Property will likely pay all creditors in full. Granting Kirby the relief he seeks would amount to a windfall for Kirby at the expense of the creditors. Kirby gave a gift a money to the Debtor. And it appears he will have that returned to him in the course of the bankruptcy proceedings. The bankruptcy court properly granted summary judgment in favor of the Trustee.

**AFFIRMED.**